[No. B164441. Second Dist., Div. One. May 26, 2004.]

DOROTHY WIMBERLY MITCHELL, Plaintiff and Appellant, v.
THE UNION CENTRAL LIFE INSURANCE COMPANY et al., Defendants
and Respondents.

1332

---

COUNSEL

Knapp, Petersen & Clarke and Stephen M. Harris for Plaintiff and Appellant.

Hill, Farrer & Burrill, Suzanne J. Holland, E. Sean McLoughlin and Warren J. Higgins for Defendants and Respondents.

## OPINION

**VOGEL, J.**—Represented by two different law firms, an employee claiming discrimination and harassment filed a workers' compensation claim and also sued her former employer for damages. The former employer—also represented by two different law firms—responded in both forums. While the former employer's million-dollar-plus offer to settle the civil action was still open, the parties' workers' compensation lawyers settled the workers' compensation claim for $57,500. After that deal was signed, sealed, and paid, the former employer again offered to settle the civil action for more than $1.1 million. The employee refused to settle, and the former employer thereafter moved for summary judgment, claiming the $57,500 paid to settle the workers' compensation claim included the settlement of the civil action. The employee opposed the motion, explaining that no one involved in the settlement negotiations (not her, not the lawyers, not the workers' compensation judge) intended to include the million-dollar civil action in the $57,500 settlement. Without suggesting an answer to the employee's question—"Why would I?"—the trial court granted the motion for summary judgment. We reverse.

## FACTS

### A.

Dorothy Wimberly Mitchell went to work for Union Central Life Insurance Company in 1972, and held various positions (most recently, Life Department Manager) until 1999. In February of that year, Mitchell became physically ill, allegedly as a result of harassment and discrimination at work. In April, she took a medical leave of absence. In May, she filed a claim with the California Department of Fair Employment and Housing, alleging she had been subjected to sexist remarks and racial discrimination by her employer. The Department issued a right to sue letter.

In December 1999, Mitchell (represented by Knapp, Petersen & Clarke) filed this action against Union Central, alleging a variety of claims under the California Fair Employment and Housing Act, and various violations of public policy, all arising out of the harassment and discrimination that were the subject of her earlier FEHA claim.[1] Union Central (represented by Hill, Farrer & Burrill) answered the complaint.

In January 2000, Mitchell (represented by McAlpin & Northwood) filed a claim for workers' compensation benefits in which she alleged she had

---

[1] Mitchell was originally represented by Kroll, Rubin & Fioella, but the Knapp firm has represented her at the times relevant to this appeal.

suffered employment-related injury as a result of the same conduct at issue in her civil action. Union Central and its insurers (represented by Pete Almeida) responded.

## B.

On January 24, 2001, after Union Central had moved unsuccessfully for summary judgment, Mitchell served Union Central with an offer to compromise for $3,650,000. (Code Civ. Proc., § 998.) On January 31, Union Central served Mitchell with an offer to compromise for $1,010,000. (*Ibid.*) Both offers expressly included the civil action and the workers' compensation action. Neither party accepted the other's offer, but neither offer was revoked before it expired. At the time, trial was set for February 28 (it was later continued to March).

## C.

In late January, at the time the offers were exchanged in the civil action, the workers' compensation lawyers (McAlpin and Almeida) agreed that $45,000 would be a reasonable amount for the settlement of Mitchell's workers' compensation claim. In February, Mitchell, McAlpin, and Almeida (without anyone from either Knapp Petersen or Hill Farrer) attended a mandatory settlement conference before a workers' compensation judge.

McAlpin told Almeida that Mitchell had rejected the $45,000 settlement offer and wanted $75,000 to settle her workers' compensation claim. Almeida rejected that demand, but the negotiations continued and Almeida ultimately offered $57,500 on condition that Mitchell sign a two-page Workers' Compensation Appeals Board "compromise and release" form—with the blanks filled in by Almeida and with two typed attachments: a two-page Addendum A drafted by Almeida, and a one-page Addendum B, a form with the blanks filled in by Almeida. McAlpin talked to Mitchell about the value of her workers' compensation case and the release, and crossed out one sentence in Addendum A. Almeida accepted the change, and the release was then signed by Mitchell, McAlpin, and Almeida.

As relevant, the two pages of the WCAB form release provided (with the handwritten portions shown by italics) that, "while employed as *an office manager [from]* 1972–*4/12/99,*" Mitchell "sustained injury arising out of and in the course of employment to *psyche; anxiety; panic attacks; unable to keep focused; headaches; difficulty breathing; discrimination.* [¶] The parties hereby agree to settle any and all claims on account of said injury by the payment of the sum of $57,500.00" plus specified sums and less others.

"Upon approval of this compromise agreement by . . . a workers' compensation judge and payment in accordance with the provisions hereof, said employee releases and forever discharges said employer and insurance carrier from all claims and causes of action, whether now known or ascertained, or which may hereafter arise or develop as a result of said injury . . . ."

Addendum A, most of which covers medical expenses, rehabilitation, and liens, provides that Mitchell "desires to avoid the risks of litigation and the defendants wish to buy their peace. The parties, through their representatives, have reviewed the circumstances surrounding this claim, including the medical reports, and are in agreement that the settlement is fair and reasonable, that the settlement not only includes the specific injuries claimed. [*Sic.*] Applicant stipulates that she did not sustain any injuries, whether specific or cumulative, for [*sic*] this employer not covered by this agreement. It is the intention of the parties herein, that the Compromise and Release covers all injuries and disabilities suffered by the applicant during her entire period of employment with this employer. Upon approval of this compromise agreement by . . . a Workers' Compensation judge . . . and payment in accordance with the provisions hereof, said employee releases and forever discharges said employer and insurance carrier . . . from all claims and causes of action, whether now known or ascertained, or which may hereafter arise or develop as a result of said injury. . . . "

The workers' compensation judge approved the release the same day it was executed, and the amount due to Mitchell under the terms of the release ($44,315) was paid to her eight days later.

### D.

On March 21, after the workers' compensation settlement was signed, sealed, and paid, Union Central offered to settle the civil action for $1,100,000 plus Mitchell's attorney's fees. Mitchell did not accept the offer.

On March 28, the first day of trial, the court ruled on a number of motions in limine. At that hearing, Union Central's lawyers (Hill Farrer) told the court that an opinion filed two days earlier, *Jefferson v. Department of Youth Authority* (Cal. App.) (review subsequently granted), had held that a release purportedly similar to the one signed by Mitchell operated as a release of the plaintiff's civil claims as well as the workers' compensation claim.

### E.

On March 30, in the workers' compensation action, Mitchell's civil lawyers (Knapp Petersen) joined with McAlpin in filing a petition for reconsideration of the workers' compensation judge's approval of the compromise and release, contending Mitchell did not intend to settle the civil action when she settled her workers' compensation claim, and that she was "aggrieved" by the approval of a release that did "not clearly and explicitly set forth its scope." She asked for an order reopening the case to clarify the parties' intent.

On the same day (March 30), the workers' compensation judge recommended that the petition be denied, stating in his report that *the release "was approved because it appeared adequate for the benefits [Mitchell] was entitled to under the California Labor Code. It is unknown what other rights in other forums [she] may be entitled to. No discussion or explanation was made as to any civil case.* [¶] The [release] is not defective for the purpose for which it was drafted. It is the use of it in another forum that has created a new dispute which is beyond the control of this jurisdiction." (Italics added.) The petition was later dismissed.

On the same day (March 30), in the civil action, Mitchell's lawyers (Knapp Petersen) filed a petition for a writ of mandate to challenge two of the trial court's in limine rulings. We issued a temporary stay order, and later issued an order to show cause. In January 2002, we denied the petition on the ground that Mitchell had an adequate remedy by way of appeal. (*Mitchell v. Superior Court* (Jan. 10, 2002, B149004 [nonpub. opn.].).)

### F.

In July, the Supreme Court filed its opinion in *Jefferson v. Department of Youth Authority* (2002) 28 Cal.4th 299 [121 Cal.Rptr.2d 391, 48 P.3d 423], holding—in a case where there was no extrinsic evidence "establish[ing] the parties' intent *not* to settle the [civil] action"—that "a compromise and release executed in a workers' compensation proceeding, that expressly release[d] 'all claims and causes of action' relating to an injury and that include[d] an attachment establishing the parties' intent to include civil claims within the scope of the release, bar[red] a [discrimination and harassment] civil action . . . for damages relating to the same events that resulted in the injury." (*Id.* at pp. 301, 309.) *Jefferson* is discussed at length below.

### G.

In August, the trial court permitted Union Central to amend its answer to add an affirmative defense alleging that Mitchell's compromise and release of

her workers' compensation claim barred her civil action. Discovery was reopened on the issue of the parties' intent vis-à-vis the release.

In September, Union Central moved for summary judgment, contending it had a complete defense to the action because (1) Mitchell's release in the workers' compensation action barred the civil action, and (2) the order (by the workers' compensation judge) approving the release constituted an award and judgment that barred the civil action under principles of res judicata. In support of its motion, Union Central submitted a declaration by Almeida, who said he was aware of Mitchell's similar allegations in the civil case, and that he added the word "discrimination" to the release "to put Mitchell on notice that the intention was also to resolve her civil claims of discrimination against Union Central." Almeida said neither McAlpin nor Mitchell had told him that the civil action was excluded from the settlement or release, and that he never said or implied to them that the release would *not* affect Mitchell's civil action—*but he conceded that they "did not, on February 5, 2001 or at any other time, ever discuss her civil action specifically."* (Italics added.)

## H.

Mitchell opposed the motion and offered her own declaration and declarations from her lawyers.

McAlpin said he knew Mitchell had a civil action against Union Central for discrimination and harassment, and he knew she had separate counsel representing her in that action. He represented Mitchell only with regard to the workers' compensation action, and he "never had a role" in representing or advising her with regard to the civil action. The February 5 settlement discussions with the workers' compensation judge (at which he represented Mitchell and Almeida represented Union Central) "concerned only the value of . . . Mitchell's worker's compensation claim," and there was no discussion at all about Mitchell's civil action—not its value, or Union Central's liability for tort or punitive damages, or the amount of those damages. McAlpin said he had no authority or intent to compromise Mitchell's civil action, and (based on Almeida's comments that day) believed Union Central's intent was to settle only the workers' compensation case.

Mitchell too said there were no discussions about the civil case at the February 5 settlement conference, and that she and McAlpin had discussed the value of the workers' compensation claim, not the value of her civil action. Her understanding was that she was settling only her workers' compensation claim, and she intended to do only that. Mitchell pointed out that, on the day she signed the release, Union Central's offer to settle the civil action was still open, and all she had to do was sign another document to

receive more than $1 million. She said she would never have forgone that offer <u>and</u> settled her workers' compensation claim for $57,500—in her words, "Why would I?"

## I.

On October 22, the trial court granted Union Central's motion for summary judgment, stating it was "undisputed [that Mitchell] intended to and did compromise her [civil] claims and released [Union Central] from all liability therefor." Mitchell's appeal is from the judgment thereafter entered.

## DISCUSSION

Mitchell contends that, at a minimum, the extrinsic evidence is sufficient to create a triable issue of material fact concerning the parties' intent at the time the workers' compensation case was settled, and that Union Central's motion for summary judgment should have been denied. We agree.

## A.

The dispositive case is *Jefferson v. Department of Youth Authority, supra,* 28 Cal.4th 299, 301, where the Supreme Court considered "whether a compromise and release executed in a workers' compensation proceeding, that expressly releases 'all claims and causes of action' relating to an injury and that includes an attachment establishing the parties' intent to include civil claims within the scope of the release, bars a civil action under the California Fair Employment and Housing Act . . . for damages relating to the same events that resulted in the injury." On the record before it, *where there was no "extrinsic evidence . . . establish[ing] the parties' intent not to settle the FEHA action"* (*id.* at p. 309, italics added), the Supreme Court concluded that "the express terms of the release evidence the parties' intent to settle the FEHA action" (*id.* at p. 301). In reaching this result, the Supreme Court made it clear that the existence of extrinsic evidence is critical, and that the cases in which extrinsic evidence showed an intent *not* to release a civil action, remain good law.

The plaintiff in *Jefferson* (a female employee) settled her workers' compensation action against her employer and signed a compromise and release similar to the one signed by Mitchell—except that it expressly waived her rights under Civil Code section 1542. After that settlement, the plaintiff in *Jefferson* sued her former employer for discrimination, and it was in that

context—and based on the parties' concession "that there was no extrinsic evidence to aid the court in interpreting the language of the release"—that the Supreme Court found the workers' compensation release barred the civil action. (*Jefferson v. Department of Youth Authority, supra,* 28 Cal.4th at p. 303.)

## B.

In *Jefferson,* the Supreme court *distinguished* but did not disapprove the Court of Appeal cases that had concluded otherwise based upon extrinsic evidence admitted to aid the court in interpreting the language of the release. *Jefferson* describes the difference this way:

"*Lopez v. Sikkema* (1991) 229 Cal.App.3d 31 [280 Cal.Rptr. 7] . . . involved a wrongful death and civil rights action against an employer, after the fatal shooting of a worker. . . . The worker's dependents had also brought a workers' compensation claim . . . and the employer settled the workers' compensation claim using a standard preprinted compromise and release form in which the decedent's dependents agreed to ' "release and forever discharge said employer . . . from all claims, demands, actions or causes of action, of every kind or nature whatsoever, on account of, or by reason of the injury and death . . . , and in particular of any, all and every claim or cause of action . . . *under Division IV of [the] Labor Code* of the State of California," ' division 4 being the codification of the workers' compensation law. . . . By referring *in particular* to workers' compensation claims, the preprinted release form at issue in *Lopez* made clear that the release was not limited to workers' compensation claims. Nevertheless, the Court of Appeal reversed summary judgment in the civil action, concluding that a triable issue of fact remained as to whether the parties intended the release to cover the civil claims alleged in the complaint. . . .

"*First, the court found no evidence in the record that, at the time of the workers' compensation settlement, the parties discussed the civil action (which was then pending) or that the judge knew about the civil action. . . . Based on* [*the rule that courts are particularly rigorous about strictly enforcing broad release language in workers' compensation settlements*]*, the court concluded the judge lacked 'sufficient information upon which to determine the desirability of releasing the* [*civil*] *claims or the adequacy of the compensatory consideration.'* . . . Second, the court noted that the order approving the settlement referred only to ' "settling *this* case." ' . . . *The court opined that, if the employer wanted to settle the civil claims, in addition to workers' compensation claims, it should have included express language to that effect in the release.* Absent such language, the scope of the release was ambiguous. . . . In other words, though the release expressly applied to ' "all

claims . . . or causes of action" ' . . . , the court put the burden on *employers* to enumerate the actions covered by the release, rather than putting the burden on *employees* to enumerate the actions *not* covered.

"The Court of Appeal again considered the same issue in *Asare v. Hartford Fire Ins. Co.* (1991) 1 Cal.App.4th 856 [2 Cal.Rptr.2d 452] . . . , but *on facts that made the worker's argument much more compelling than it is here.* In *Asare,* as here, the worker was pursuing a FEHA claim after settling a related workers' compensation proceeding by way of compromise and release. . . . The compromise and release form at issue in *Asare* included the same preprinted language at issue here, purporting to release ' "all claims and causes of action" ' . . . , but the attorney who represented the worker in the workers' compensation proceeding recalled that the parties had discussed the FEHA action at the time of the workers' compensation settlement and had orally agreed that the settlement did not cover that action. . . . *That fact, of course, makes Asare distinguishable from this case, because Jefferson presented no extrinsic evidence indicating the parties intended to exclude her FEHA action from the release. The court in Asare also found significant that the worker had a different attorney in the workers' compensation proceeding than in the FEHA action and that no explicit reference to the FEHA action appeared in the compromise and release.* . . . The court agreed with *Lopez* . . . that the burden should be on employers to enumerate claims that fall within the scope of the settlement, even when the settlement expressly refers to all claims. . . .

"Finally, the Court of Appeal addressed the same issue in *Delaney v. Superior Fast Freight* (1993) 14 Cal.App.4th 590 [18 Cal.Rptr.2d 33] . . . *Delaney* involved a worker who was terminated after he threatened to kill his supervisor. . . . The worker filed a workers' compensation claim and also a civil suit alleging FEHA and other causes of action. . . . After considerable procedural maneuvering not relevant here, the worker dropped the FEHA action, but continued to allege, among other things, negligent and intentional infliction of emotional distress. . . . The trial court granted summary judgment, concluding workers' compensation was the exclusive remedy for any emotional distress the worker might have suffered. . . . On appeal, the worker challenged that conclusion, but while the appeal of the civil action was pending, the worker executed a compromise and release in his workers' compensation case, using the same preprinted language that is at issue here. . . . The employer then sought dismissal of the appeal in the civil action, arguing that the compromise and release settled the action. . . .

"The Court of Appeal rejected the employer's argument. It noted that the portion of the compromise and release on which the employer relied was merely preprinted language that 'appears on all standard workers' compensation forms.' . . . The release made no specific reference to the then pending

civil action and therefore, according to the court, only applied to claims falling 'within the scope of the workers' compensation system.' . . . The court opined that the parties should have expressly addressed the civil action in the compromise and release, but because they did not, a question of fact existed as to the scope of the release. . . .

"In summary, the Court of Appeal decisions that have considered the issue have been consistent in their view that the preprinted language in a workers' compensation compromise and release form should be narrowly construed to apply only to workers' compensation claims. As discussed, however, *Asare* is distinguishable from this case because extrinsic evidence in *Asare* established the parties' intent *not* to settle the FEHA action. . . . The record in this case includes no such evidence. As for *Lopez* and *Delaney*, we note that here, unlike those cases, an attachment to the compromise and release makes clear the parties' intent to settle civil claims in addition to workers' compensation claims. Because *Lopez* and *Delaney* did not consider the legal significance of a comparable attachment, we find those cases factually distinguishable. *In addition, in Lopez and Delaney, the civil actions were pending at the time the parties executed their workers' compensation settlements, whereas here, Jefferson had not filed her FEHA action when she executed the compromise and release, and the Youth Authority had no basis for assuming she intended to do so.* In light of these distinctions, we need not consider whether *Lopez* and *Delaney* were correctly decided, and we neither approve nor disapprove their holdings.

■ "Accordingly, we hold that when, as in this case, an employee has knowledge of a potential claim against the employer at the time of executing a general release in the workers' compensation proceeding, but has not yet initiated litigation of that claim, the employee has the burden of expressly excepting the claim from the release. Absent this exception, *and absent contrary extrinsic evidence,* a court will enforce general language, such as is found in the compromise and release and attachment in the present case, releasing all claims, including civil claims." (*Jefferson v. Department of Youth Authority, supra,* 28 Cal.4th at pp. 307–310, most italics added, citations omitted.)

## C.

We view Mitchell's case as far more compelling than any of the cases discussed above, and view the extrinsic evidence as more than sufficient to establish the existence of a triable issue of fact concerning the parties' intent at the time the workers' compensation claim was settled.

Mitchell had two lawyers, one representing her in her workers' compensation action, the other representing her in her civil action. Her workers'

compensation lawyer had no authority to settle her civil action, and did not intend to do so. The civil action is not mentioned in the compromise and release, and both Union Central's workers' compensation lawyer *and* the workers' compensation judge—not just Mitchell's workers' compensation lawyer—concede the civil action was not discussed at any time during their negotiations. Mitchell, of course, had no intent to include the civil action in her settlement of her workers' compensation case. As she herself put it, "Why would [she]?" At the time of the $57,500 settlement of the workers' compensation case, Union Central's offer to settle the civil action for more than $1 million was still open—and there is also the fact that, on March 21—after the workers' compensation settlement was signed, sealed, and paid—Union Central once again offered to settle the civil action for $1,100,000 plus Mitchell's attorney's fees.

■ These facts leave no doubt in our minds that neither the workers' compensation lawyers nor their clients intended to include the civil action in their settlement of the workers' compensation claim, and this extrinsic evidence should have easily resulted in an order denying Union Central's motion for summary judgment. (*Warner Constr. Corp. v. City of Los Angeles* (1970) 2 Cal.3d 285, 296–297 [85 Cal.Rptr. 444, 466 P.2d 996]; *Morey v. Vannucci* (1998) 64 Cal.App.4th 904, 912 [75 Cal.Rptr.2d 573].)[2]

---

[2] We summarily reject Union Central's suggestion that there was nothing ambiguous about the release signed by Mitchell, and thus no basis for the consideration of extrinsic evidence. Rational interpretation of a document such as this requires a preliminary consideration of "all credible evidence offered to prove the intention of the parties," and it is only after the consideration of such evidence that a court can fairly decide whether an agreement is fairly susceptible of either one of the two interpretations claimed by the parties. (*Pacific Gas & E. Co. v. G.W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 38–40 [69 Cal.Rptr. 561, 442 P.2d 641]; *Asare v. Hartford Fire Ins. Co., supra,* 1 Cal.App.4th at pp. 862–863.) Even the most cursory examination of the extrinsic evidence offered in this case shows the compromise and release was executed under circumstances where the parties' left hands (the lawyers representing them in the civil action) didn't know what their right hands (the workers' compensation lawyers) were doing, that the compromise and release are ambiguous under the circumstances, and that no one intended the release to include the civil action. Had Union Central intended otherwise, it should have expressly included Mitchell's pending civil claim in the release. (*Jefferson v. Department of Youth Authority, supra,* 28 Cal.4th at pp. 309–310.) Union Central's other contentions—such as its claim that the order denying Mitchell's motion for reconsideration in the workers' compensation forum (that is, her attempt to reopen that case to vacate the settlement) somehow bars her right to litigate the *effect* of that compromise in the civil action—are either equally without merit or resolved by our resolution of this appeal on the grounds discussed in the text, and we therefore do not address those issues. For the record, however, we are aware of the Supreme Court's current interest in this issue, as evidenced by its grant of review in *Claxton v. Waters & Pac. Maritime Ass'n* (March 12, 2002, B141129) [nonpub. opn.] review granted, June 12, 2002, S106106.

## DISPOSITION

The judgment is reversed, and the cause is remanded to the trial court with directions (1) to enter a new order denying Union Central's motion for summary judgment, and (2) to set the case on track for trial. Mitchell is awarded her costs of appeal.

Spencer, P. J., and Ortega, J., concurred.

Respondents' petition for review by the Supreme Court was denied September 15, 2004.