[No. S106106. Aug. 30, 2004.]

CAROLYN CLAXTON, Plaintiff and Appellant, v.
RAY WATERS et al., Defendants and Respondents.

COUNSEL

Law Offices of Joseph R. Zamora and Joseph R. Zamora for Plaintiff and Appellant.

Gibson, Dunn & Crutcher, David A. Cathcart, Paul DeCamp, Michele L. Maryottt and Jeffrey F. Webb for Defendants and Respondents.

OPINION

KENNARD, J.—In executing the standard preprinted form used to settle workers' compensation claims, does an injured worker also release causes of action that are not exclusively subject to the workers' compensation law or are not within the scope of that law? The answer is "no." Those causes of action, however, may be the subject of a separate settlement and release.

## I

From February 1995 until her resignation in September 1997, Carolyn Claxton worked as an office assistant for defendant Pacific Maritime Association (PMA). Claxton's supervisor was Ray Waters.

On December 16, 1997, Claxton filed a claim with the Workers' Compensation Appeals Board (WCAB) against PMA for an injury to her "left lower extremity and psyche" from a slip and fall on May 7, 1997. On January 16, 1998, Claxton filed a second and separate workers' compensation claim against PMA for injury to "psyche due to sexual harassment."

On September 15, 1998, Claxton filed this civil action against PMA and Waters alleging, as relevant here, sexual harassment in violation of the Fair Employment and Housing Act (Gov. Code, § 12900 et seq.). On November 6, 1998, defendants filed their answer to the complaint.

On February 25, 1999, Claxton and PMA settled the workers' compensation claims for $25,000. As part of the settlement, Claxton executed a preprinted compromise and release form (WCAB form 15). The use of this form is mandatory. (Cal. Code Regs., tit. 8, § 10874.) The form had only the case numbers for Claxton's two claims for workers' compensation; it made no reference to the pending civil action against PMA and Waters.

In preprinted paragraph 3, WCAB form 15 states: "Upon approval of this compromise agreement by the Workers' Compensation Appeals Board or a workers' compensation judge and payment in accordance with the provisions hereof, said employee releases and forever discharges said employer and insurance carrier from all claims and causes of action, whether now known or ascertained, or which may hereafter arise or develop as a result of said injury, including any and all liability of said employer and said insurance carrier and each of them to the dependents, heirs, executors, representatives, administrators or assigns of said employee."

On March 16, 1999, a workers' compensation judge approved the compromise and release. The order approving the settlement contained the case numbers for both of Claxton's workers' compensation claims, but not the case number for the civil action.

Thereafter, in the civil lawsuit alleging sexual harassment, defendants PMA and Waters moved in the superior court for leave to file an amended answer adding, among other things, an affirmative defense that the execution of the workers' compensation compromise and release also extinguished Claxton's claims in her civil action against PMA and Waters. The court granted the

motion. Claxton then moved for summary adjudication of, among other things, the affirmative defense.

In support of that motion, Claxton submitted declarations by herself and by the attorney who had represented her in the workers' compensation proceedings. Claxton's declaration stated that she thought the workers' compensation release related only to her knee injury "and did not include" her claim for damages in the civil action alleging sexual harassment by her "employer," that the preprinted workers' compensation release form said nothing about the settlement of her civil action alleging sexual harassment, and that she had not authorized her workers' compensation attorney to settle her civil action.

The declaration of Claxton's workers' compensation attorney stated that the workers' compensation settlement was intended to cover only plaintiff's knee injury claim "and did not include the applicant's claim for civil damages for injuries as a result of the sexual harassment which is the subject of her civil action against her employer . . . ." The declaration pointed out that the preprinted release form had no reference to the pending civil action for sexual harassment, and said Claxton had not authorized settlement of the civil lawsuit by means of the workers' compensation compromise and release.

While Claxton's motion was pending in the superior court, defendants moved for summary judgment, asserting that in executing the workers' compensation compromise and release form Claxton extinguished any recovery for emotional distress damages in her civil lawsuit against defendants.

The trial court granted defendants' motion for summary judgment, took plaintiff's motion for summary adjudication off calendar as moot, and awarded defendants $92,459.75 in attorney fees.

After a reversal by the Court of Appeal, we granted defendants' petition for review.

## II

California's workers' compensation scheme was developed early in the 20th century as a result of the inadequacy of the common law that often denied injured workers any recovery for work-related injuries. (*Western Indemnity Co. v. Pillsbury* (1915) 170 Cal. 686, 693 [151 P. 398]; see generally *Mathews v. Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 719, 728–734 [100 Cal.Rptr. 301, 493 P.2d 1165] [describing the history and development of California's workers' compensation law].)

The workers' compensation law applies to employee injuries "arising out of and in the course of the employment" when the statutorily specified

"conditions of compensation concur." (Lab. Code, § 3600.) Generally, it is the exclusive remedy for such injuries. (*Id.*, §§ 3600, subd. (a), 3601.) ▮ But some claims, including those based on sexual or racial discrimination or other conduct contrary to fundamental public policy, are not subject to the exclusivity provisions of the workers' compensation law. (*City of Moorpark v. Superior Court* (1998) 18 Cal.4th 1143, 1155 [77 Cal.Rptr.2d 445, 959 P.2d 752].) Thus, such claims may be the subject of both workers' compensation proceedings and civil actions. (*Id.* at p. 1161.) For convenience, we will here refer to claims "outside" the workers' compensation system as meaning claims that are either not within the scope of workers' compensation law or not subject to the exclusivity provisions of that law.

▮ Liability under the workers' compensation law is founded in neither tort nor contract law. (2 Witkin, Summary of Cal. Law (9th ed. 1987) Workers' Compensation, § 7, p. 565.) Instead, it is liability without fault (Cal. Const., art. XIV, § 4; Lab. Code, § 3600; *Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund* (2001) 24 Cal.4th 800, 811 [102 Cal.Rptr.2d 562, 14 P.3d 234]), to ensure that injured workers are quickly provided benefits to relieve the effects of the industrial injury (Cal. Const., art. XIV, § 4). Thus, informal rules of pleading apply to such proceedings (*Rivera v. Workers' Comp. Appeals Bd.* (1987) 190 Cal.App.3d 1452, 1456 [236 Cal.Rptr. 28]), and workers may be represented by individuals other than attorneys (Lab. Code, § 5501). Also, all workers' compensation statutes are to be liberally construed in favor of the injured worker. (*Id.*, § 3202; *Department of Rehabilitation v. Workers' Comp. Appeals Bd.* (2003) 30 Cal.4th 1281, 1290 [135 Cal.Rptr.2d 665, 70 P.3d 1076].)

▮ To safeguard the injured worker from entering into unfortunate or improvident releases as a result of, for instance, economic pressure or bad advice, the worker's knowledge of and intent to release particular benefits must be established separately from the standard release language of the form. (*Sumner v. Workers' Comp. Appeals Bd.* (1983) 33 Cal.3d 965, 972–973 [191 Cal.Rptr. 811, 663 P.2d 534] (*Sumner*).) Even with respect to claims *within* the workers' compensation system, execution of the form does not release certain claims unless specific findings are made. (See former Lab. Code, § 4646, subd. (a) [vocational rehabilitation services cannot be settled without specific findings]; *Thomas v. Sports Chalet, Inc.* (1977) 42 Cal.Comp.Cases 625 [same]; *Rodgers v. Workers' Comp. Appeals Bd.* (1985) 168 Cal.App.3d 567 [214 Cal.Rptr. 303] [potential claim for later injury in rehabilitation program cannot be released without specific language].)

The concerns just discussed are even stronger when the employer seeks to apply the standard preprinted workers' compensation release language to claims *outside* the workers' compensation scheme. Of note here is the Court

of Appeal's decision in *Lopez v. Sikkema* (1991) 229 Cal.App.3d 31 [280 Cal.Rptr. 7] (*Lopez*). There, the surviving family members of a worker shot and killed by strikebreakers hired by the employer brought a civil lawsuit against the employer and the individuals that killed the worker, alleging personal injury, wrongful death, conspiracy to violate civil rights, and violation of civil rights. (*Id.* at pp. 33–34.) The employer moved for summary judgment on the ground that the standard workers' compensation release executed by the family members barred the civil claims arising out of the worker's death. The trial court granted the motion.

The Court of Appeal reversed. It noted that there was no evidence that civil claims were discussed in connection with the workers' compensation settlement, and that there was nothing in the record to indicate that the workers' compensation judge was aware of the civil action or had sufficient information to determine the desirability of releasing the civil claims or the adequacy of the compensation for approving such a release. (*Lopez, supra,* 229 Cal.App.3d at pp. 36–38.) In the words of the *Lopez* court: "If the mandatory compromise and release form executed by appellants was intended to cover claims which are not compensable under the workers' compensation act, it should have contained express language to that effect." (*Id.* at pp. 38–39.)

In *Asare v. Hartford Fire Ins. Co.* (1991) 1 Cal.App.4th 856 [2 Cal.Rptr.2d 452] (*Asare*), the Court of Appeal took a similar view. There, the worker brought a civil action against his employer alleging racial discrimination. While that lawsuit was pending, the plaintiff executed a workers' compensation compromise and release form. The trial court granted a defense motion for summary judgment, ruling that the compromise and release barred the civil action. The Court of Appeal reversed. The court considered it significant that the parties had separate counsel in the two proceedings; that the release was negotiated by the workers' compensation attorneys; and, "perhaps most importantly," that although the parties' attorneys knew of the discrimination cause of action, there was no reference to it in the workers' compensation release. (*Id.* at p. 863.)

In yet another decision, *Delaney v. Superior Fast Freight* (1993) 14 Cal.App.4th 590 [18 Cal.Rptr.2d 33] (*Delaney*), the Court of Appeal rejected an attempt to extend the workers' compensation release to bar causes of action outside the workers' compensation system. There, an employee brought a civil lawsuit against his employer alleging employment discrimination based on sexual orientation. While the civil action was pending on appeal, the plaintiff worker and the employer settled his workers' compensation claim. Thereafter, the employer contended in the Court of Appeal that the workers' compensation settlement barred the plaintiff worker's civil claim for emotional distress. The Court of Appeal disagreed. It pointed out that the

mandatory compromise and release form used in settling workers' compensation claims was "preprinted" and made "no specific reference to potentially independent civil rights or remedies." (*Id.* at p. 599.) Therefore, the court concluded, "it may reasonably be understood as releasing only those claims which traditionally fall within the scope of the workers' compensation system." (*Ibid.*)

While this case was pending before us, yet another Court of Appeal decision addressed the issue of an employer's attempt to extend a workers' compensation release form to bar a civil lawsuit. In that case, *Mitchell v. Union Central Life Insurance Company* (2004) 118 Cal.App.4th 1331 [13 Cal.Rptr.3d 732] (*Mitchell*), the employee sued her employer alleging sexual and racial discrimination in violation of the Fair Employment and Housing Act. She then filed a workers' compensation claim alleging work-related injury based on the same conduct as in her civil lawsuit. While an offer by the employer to settle the civil lawsuit for $1,010,000 was outstanding, the parties settled the workers' compensation claim for $57,500. (*Id.* at p. 1334.) After execution of the workers' compensation release, the employer increased to $1,100,000 its offer to settle the civil lawsuit. The plaintiff rejected the offer. (*Id.* at p. 1335.) The employer then moved for summary judgment in the civil action, arguing that the release in the workers' compensation proceeding barred the civil action. (*Id.* at p. 1337.) The trial court granted the motion. (*Id.* at p. 1338.)

The Court of Appeal reversed. It relied on the decisions of the Courts of Appeal in *Lopez, supra,* 229 Cal.App.3d 31, *Asare, supra,* 1 Cal.App.4th 856, and *Delaney, supra,* 14 Cal.App.4th 590. And it quoted this court's observation in *Jefferson v. Department of Youth Authority* (2002) 28 Cal.4th 299, 309 [121 Cal.Rptr.2d 391, 48 P.3d 423] (*Jefferson*) that " 'the Court of Appeal decisions that have considered the issue have been consistent in their view that the preprinted language in a workers' compensation compromise and release form should be narrowly construed to apply only to workers' compensation claims.' " (*Mitchell, supra,* 118 Cal.App.4th at p. 1341.) In concluding that the evidence left no doubt that the workers' compensation settlement was not intended to include the civil claims, the *Mitchell* court noted that the plaintiff had different attorneys representing her in the different proceedings (as here), and that there was no mention in the workers' compensation release form of the pending civil lawsuit (as here). ( *Id.* at pp. 1341–1342.)

Defendants insist, however, that in *Jefferson, supra,* 28 Cal.4th 299, this court effectively disapproved the Court of Appeal decisions in *Delaney, supra,* 14 Cal.App.4th 590, and in *Lopez, supra,* 229 Cal.App.3d 31. They construe *Jefferson* as holding that, in the absence of extraordinary circumstances, an employee's execution of the preprinted workers' compensation

compromise and release form, with its standard language releasing "all claims and causes of action," also releases claims that fall outside the workers' compensation system. We disagree.

In *Jefferson, supra,* 28 Cal.4th 299, the preprinted workers' compensation compromise and release form had *an attachment* expressing the parties' intent to have the release also apply to the employee's civil action alleging sex discrimination. We held that the release did encompass the civil claims. Our reasons were: (1) the attachment to the workers' compensation release form clearly stated the parties' intent to also settle claims outside the workers' compensation law, and (2) the plaintiff had not offered extrinsic evidence establishing the parties' contrary intent. (*Id.* at p. 304.) That is not the situation here. There is no attachment to the workers' compensation release form here. And, contrary to defendants' contention, *Jefferson* did not disapprove the Court of Appeal decisions in *Delaney, supra,* 14 Cal.App.4th 590, and in *Lopez, supra,* 229 Cal.App.3d 31: "[W]e need not consider whether *Lopez* and *Delaney* were correctly decided, and we neither approve nor disapprove their holdings." (*Jefferson, supra,* 28 Cal.4th at p. 310.)

■ To summarize, we hold that the standard language of the preprinted form used in settling workers' compensation claims releases only those claims that are within the scope of the workers' compensation system, and does not apply to claims asserted in separate civil actions.[1] We turn now to the question of whether extrinsic evidence is admissible to show that the parties intended the release to also apply to claims *outside* the workers' compensation system.

---

[1] The compromise and release here, in addition to the preprinted release language in paragraph 3 quoted at page 371, *ante,* contains a paragraph 10 that says: "The nature, duration, extent and cause of the employee's disability are in dispute. Applicant desires to control his/her future medical expenses. Defendants desire to buy their peace. The parties desire to settle the hazards, risks, and delays of litigation for a lump sum certain. All parties agree that the Compromise and Release is a fair and equitable settlement. The parties require that the consideration for this Compromise and Release includes full compensation for all injuries sustained by the applicant while employed by defendants, including all specific injuries and continuous trauma. The medical record is herein incorporated by reference. The parties waive Labor Code § 5313 [the statute requiring the workers' compensation judge to make factual findings and a decision determining the rights of the parties]." The form's references to disability, medical expenses, injuries sustained during employment, and a waiver of findings and decisions to be made by a workers' compensation judge, suggest that the release does not apply to claims *outside* the workers' compensation system. (See *Sumner, supra,* 33 Cal.3d at p. 973, fn. 9.)

It would be helpful to all concerned, of course, if this suggestion could be made more explicit. We urge those responsible for drafting the standard worker's compensation compromise and release form to revise that form to include a statement, in the clearest possible terms, that execution of the form has no effect on claims outside the workers' compensation system.

## III

As discussed below, case law has allowed the use of evidence extrinsic to the language of the preprinted workers' compensation compromise and release form to show whether the parties intended to also release claims *outside* the workers' compensation system.

In a 1983 decision, *Sumner, supra,* 33 Cal.3d at page 973, this court stated that a claim for death benefits, which fell within the workers' compensation system, might be barred by the executed workers' compensation release form if the employer could show that the parties did intend the release to include, as part of their settlement, a claim for death benefits. Thereafter, however, the Courts of Appeal extended the use of extrinsic evidence to show whether the parties intended the release to include claims *outside* the workers' compensation system. (*Delaney, supra,* 14 Cal.App.4th at pp. 599–600; *Asare, supra,* 1 Cal.App.4th at p. 863; *Lopez, supra,* 229 Cal.App.3d at p. 39.)

 We are now convinced that extrinsic evidence should not be admissible to show that the standard preprinted workers' compensation release form also applies to claims *outside* the workers' compensation system. To allow such evidence would unduly burden our courts. Illustrative of this point are the Court of Appeal decisions discussed earlier: *Lopez, supra,* 229 Cal.App.3d 31; *Asare, supra,* 1 Cal.App.4th 856; *Delaney, supra,* 14 Cal.App.4th 590; and *Mitchell, supra,* 118 Cal.App.4th 1331. In those cases, as here, the employer relied on standard language in the preprinted workers' compensation release form as an affirmative defense in the worker's civil lawsuit and later as the basis for a motion for summary judgment in that action. In each case, the appellate court determined that there were triable issues of fact as to whether the parties intended the workers' compensation settlement to also apply to claims outside the workers' compensation system, thus requiring further proceedings. This necessitated the presentation of evidence on that issue, and ultimately required resolution of disputed issues of fact as to what occurred in negotiations at the workers' compensation proceedings. Thus, allowing such extrinsic evidence would require our trial courts, which currently are under severe budgetary restraints, to expend their already scarce resources to divine and reconcile the parties' intentions in signing a standard preprinted workers' compensation release form. And parties too would have to spend time and money in presenting this evidence.

 Moreover, allowing such extrinsic evidence would create a trap for the unwary worker. It is highly unlikely that an injured employee's settlement of a workers' compensation claim, by signing the mandatory standard preprinted workers' compensation release form, would alert the worker that the release also applies to claims outside the workers' compensation system. To

hold that the standard language of the release would also apply to the injured worker's civil claims outside of the workers' compensation scheme, regardless of whether a civil action has been filed at the time of the execution of the workers' compensation release, would run counter to the public policy of protecting the injured worker against the unintentional loss of workers' rights. (*Jefferson, supra,* 28 Cal.4th at p. 304; *Sumner, supra,* 33 Cal.3d at p. 972; *Johnson v. Workmen's Comp. App. Bd.* (1970) 2 Cal.3d 964, 974 [88 Cal.Rptr. 202, 471 P.2d 1002].)

■ To disallow such extrinsic evidence would not be unfair to the parties. It would be a simple matter for parties who have agreed to settle not only workers' compensation claims but also claims outside the workers' compensation system to execute another document expressing that agreement. Thus, execution of the mandatory standard preprinted compromise and release form would only establish settlement of the workers' compensation claims; the intended settlement of claims outside the workers' compensation system would have to be reflected in a separate document. (See *Jefferson, supra,* 28 Cal.4th 299 [attachment to workers' compensation form documented release of claims outside of workers' compensation]; *Delaney, supra,* 14 Cal.App.4th at p. 600 [parties should augment workers' compensation form to expressly refer to release of claims outside of workers' compensation].) As is true with settlements in civil actions generally, the separate document need not identify precise claims; it would be sufficient to refer generally to causes of action outside the workers' compensation law "in clear and non-technical language." (*Sumner, supra,* 33 Cal.3d at p. 972.)

Our holding changes existing law on the admissibility of evidence extrinsic to the workers' compensation release to try to show that the release included causes of action outside the workers' compensation system. (*Lopez, supra,* 229 Cal.App.3d at p. 39; *Asare, supra,* 1 Cal.App.4th at pp. 863–864; see *Sumner, supra,* 33 Cal.3d at p. 973.) We therefore must determine whether our holding should be applied retroactively or only prospectively. We now consider that question.

## IV

"Although as a general rule judicial decisions are to be given retroactive effect [citation], there is a recognized exception when a judicial decision changes a settled rule on which the parties below have relied. [Citations.] '[C]onsiderations of fairness and public policy may require that a decision be given only prospective application. [Citations.] Particular considerations relevant to the retroactivity determination include the reasonableness of the parties' reliance on the former rule, the nature of the change as substantive or procedural, retroactivity's effect on the administration of justice, and the

purposes to be served by the new rule. [Citations.]' " (*Smith v. Rae-Venter Law Group* (2002) 29 Cal.4th 345, 372 [127 Cal.Rptr.2d 516, 58 P.3d 367]; accord, *Woods v. Young* (1991) 53 Cal.3d 315, 330 [279 Cal.Rptr. 613, 807 P.2d 455].)

■ We conclude that our holding should apply only prospectively. The rule we are changing is one that parties in this and other cases may have relied on in settling claims. In particular, employers may have refrained from proposing and executing separate documents expressly releasing claims outside the workers' compensation system because they were confident they could prove by extrinsic evidence a mutual intent to release such claims. Our holding barring the admission of extrinsic evidence for this purpose has a substantive effect because it may, in individual cases, effectively alter the legal consequences of executing the standard compromise and release form. Although barring the use of extrinsic evidence will preserve judicial resources, denying retroactive application will not unduly impact the administration of justice because it will merely permit a gradual and orderly transition.[2] Accordingly, we conclude that considerations of fairness and public policy require prospective application, and that for any preprinted workers' compensation settlement form executed before the finality of this decision (see *Sumner, supra,* 33 Cal.3d at p. 974), extrinsic evidence may be admitted to prove the parties intended to release claims outside the workers' compensation system.[3]

---

[2] In cases involving the execution of the preprinted workers' compensation release form after the finality of this decision, the Court of Appeal decisions in *Mitchell, supra,* 118 Cal.App.4th 1331, *Delaney, supra,* 14 Cal.App.4th 590, *Asare, supra,* 1 Cal.App.4th 856, and *Lopez, supra,* 229 Cal.App.3d 31, are not to be followed to the extent that they allow the admission of extrinsic evidence to try to show that the release extends to claims outside the workers' compensation system.

[3] We reject defendants' argument that plaintiff, by filing her workers' compensation claim for sexual harassment, necessarily took the position that her claim was within the workers' compensation scheme, and thus she is estopped from asserting in her civil lawsuit that the sexual harassment is outside of that scheme. The doctrine of judicial estoppel precludes a party from taking inconsistent positions in judicial or quasi-judicial proceedings. (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 183 [70 Cal.Rptr.2d 96].) Here, however, plaintiff has taken *the same position*—that she was sexually harassed in the course of employment—in two different forums, the workers' compensation proceeding and the civil action against defendants. Therefore, estoppel does not apply here.

Our holding that this decision applies prospectively only means that there may be further proceedings in this case addressed to the issue of the intent of the parties in entering into the workers' compensation compromise and release. In the event that such proceedings in this case do occur, we note that the interpretation of the compromise and release requires consideration of " 'all credible evidence offered to prove the intention of the parties.' " (*Mitchell, supra,* 118 Cal.App.4th at p. 1342, fn. 3; accord, *Asare, supra,* 1 Cal.App.4th at pp. 862–863.) *Kohler v. Interstate Brands Corp.* (2002) 103 Cal.App.4th 1096 [127 Cal.Rptr.2d 366], is disapproved to the extent it is inconsistent with this view.

The judgment of the Court of Appeal is affirmed.

George, C. J., Baxter, J., Werdegar, J., Chin, J., and Moreno, J., concurred.

**BROWN, J.,** Concurring and Dissenting.—I agree with the majority's decision to affirm the judgment of the Court of Appeal. But that is the only portion of the majority opinion with which I am in accord. In reaching the correct result, the majority—unable to resist the bureaucratic propensity for intermeddling—improperly and unnecessarily creates an exception to our long-standing rules of contract interpretation for a preprinted compromise and release form used in workers' compensation cases. Because I believe that generally applicable rules should govern here, I write separately.

## I.

Under Civil Code section 1635, "[a]ll contracts, whether public or private, are to be interpreted by the same rules, except as otherwise provided by this Code." Our courts have consistently applied this maxim to releases and determined the scope of a release using our long-standing rules of contract interpretation. (See, e.g., *Hess v. Ford Motor Co.* (2002) 27 Cal.4th 516, 524 [117 Cal.Rptr.2d 220, 41 P.3d 46] (*Hess*); *Solis v. Kirkwood Resort Co.* (2001) 94 Cal.App.4th 354, 360 [114 Cal.Rptr.2d 265] (*Solis*).) Indeed, we purportedly applied these rules to preprinted release forms used in workers' compensation cases just two years ago in *Jefferson v. Department of Youth Authority* (2002) 28 Cal.4th 299, 304–307 [121 Cal.Rptr.2d 391, 48 P.3d 423] (*Jefferson*).

These rules provide that a "contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." (Civ. Code, § 1636.) "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible . . . ." (Civ. Code, § 1639.) But "[w]hen, through fraud, mistake, or accident, a written contract fails to express the real intention of the parties, such intention is to be regarded, and the erroneous parts of the writing disregarded." (Civ. Code, § 1640.)

"The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning; unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed." (Civ. Code, § 1644.) "If the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it." (Civ. Code, § 1649.) Moreover, a "contract may be explained by reference to the circumstances under which it

was made, and the matter to which it relates." (Civ. Code, § 1647.) Thus, "[a]n ambiguity can be patent, arising from the face of the writing, or latent, based on extrinsic evidence." (*Solis, supra,* 94 Cal.App.4th at p. 360.) And, if an ambiguity exists, extrinsic evidence may be admitted in "interpreting the contract." (*Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165 [6 Cal.Rptr.2d 554] (*Winet*).)

Although these rules govern all contracts absent a statutory provision to the contrary (Civ. Code, § 1635), the majority refuses to apply them. First, the majority ignores the language of the release (see Civ. Code, §§ 1639, 1644) and holds that "the standard language of the preprinted form used in settling workers' compensation claims releases only those claims that are within the scope of the workers' compensation system, and does not apply to claims asserted in separate civil actions." (Maj. opn., *ante,* at p. 376.) Second, it bars consideration of extrinsic evidence "to show that the standard preprinted workers' compensation release form also applies to claims *outside* the workers' compensation system." (*Id.* at p. 377.)

The majority, however, identifies no Civil Code or workers' compensation statute that creates an exception to our long-standing rules of contract interpretation for preprinted release forms used in workers' compensation cases. Indeed, it provides *no* statutory basis for its holding, and my review of California law reveals no statutory support for this exception. As such, I see no legitimate ground for creating it. (See Civ. Code, § 1635.)

The majority's stated grounds for creating such an exception are not compelling. Labor Code former section 4646, subdivision (a), does not support the majority's proposed exception to our long-standing rules of contract interpretation because there is no statutory basis for the majority's holding. *Rodgers v. Workers' Comp. Appeals Bd.* (1985) 168 Cal.App.3d 567, 575–576 [214 Cal.Rptr. 303], is also inapposite. In *Rodgers,* the Court of Appeal applied our rules of contract interpretation and found that the language of the preprinted release form, by its terms, did not encompass a workers' compensation claim predicated on a *new* injury suffered during rehabilitation services *after* the claimant signed the release.

Likewise, the Court of Appeal cases cited by the majority—*Lopez v. Sikkema* (1991) 229 Cal.App.3d 31 [280 Cal.Rptr. 7] (*Lopez*), *Asare v. Hartford Fire Ins. Co.* (1991) 1 Cal.App.4th 856 [2 Cal.Rptr.2d 452] (*Asare*), *Delaney v. Superior Fast Freight* (1993) 14 Cal.App.4th 590 [18 Cal.Rptr.2d 33] (*Delaney*), and *Mitchell v. Union Central Life Ins. Co.* (2004) 118 Cal.App.4th 1331 [13 Cal.Rptr.3d 732] (*Mitchell*)—are not persuasive. To the extent these cases exempt preprinted release forms used in workers' compensation cases from our rules of contract interpretation, they provide no

statutory basis for doing so. Absent such a basis, these cases do not and cannot support the majority's holding. (See Civ. Code, § 1635.)

Moreover, these cases misread our decision in *Sumner v. Workers' Comp. Appeals Bd.* (1983) 33 Cal.3d 965 [191 Cal.Rptr. 811, 663 P.2d 534] (*Sumner*). In *Sumner*, an employee executed a preprinted release form containing virtually the same language at issue here. (*Id.* at pp. 967–969.) Based on this language, the employer contended the employee released his claim for death benefits—a claim that he did not know of at the time he signed the release. (*Id.* at p. 969.) Because the employee was unsophisticated and executed the release without the benefit of counsel (*id.* at p. 972), we concluded that the release did not cover the plaintiff's unknown claim for death benefits. (*Id.* at pp. 972–973.) We reached this conclusion even though the release included an addendum waiving all unknown claims and eschewing the benefits of Civil Code section 1542. (*Sumner*, at pp. 972–973.)

In reaching this conclusion, however, we did not create an exception to our long-standing rules of contract interpretation. Specifically, *Sumner* did not, as suggested by *Lopez*, *Asare*, *Delaney* and *Mitchell*, place the burden on employers to enumerate the causes of action covered by the preprinted release form even though the form expressly covered all "claims and causes of action." (See *Lopez*, *supra*, 229 Cal.App.3d at pp. 38–39; *Asare*, *supra*, 1 Cal.App.4th at p. 864; *Delaney*, *supra*, 14 Cal.App.4th at pp. 599–600; *Mitchell*, *supra*, 118 Cal.App.4th at pp. 1341–1342.) Instead, *Sumner* simply applied our rules of contract interpretation and the case law construing these rules. These rules provide that "[a] general release does not extend to claims which the creditor *does not know or suspect to exist* in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor." (Civ. Code, § 1542, italics added.) Although a releasor may waive all unknown claims despite the protections of Civil Code section 1542, an "oblique reference to 'all known and unknown' claims" is not enough. (*Winet*, *supra*, 4 Cal.App.4th at p. 1170.) Moreover, any waiver of the benefits of Civil Code section 1542 is invalid if the releasor is unsophisticated and lacks the advice of independent counsel. (See *Winet*, at p. 1170.) Because the plaintiff in *Sumner* was unsophisticated and lacked independent counsel, we applied these rules to hold that the preprinted release form and addendum did not bar the plaintiff's unknown claim for death benefits.[1] (See *Casey v. Proctor* (1963) 59 Cal.2d 97, 109 [28 Cal.Rptr. 307, 378 P.2d 579].) Thus, *Sumner* followed our rules of contract interpretation and did not create an exception to these rules for preprinted release forms used in workers' compensation settlements.

---

[1] *Sumner* does not control here because plaintiff knew about the statutory cause of action at issue here and had the benefit of independent counsel at the time she signed the release.

In any event, as the majority observes, our Courts of Appeal have uniformly "extended the use of extrinsic evidence to show whether the parties intended the release to include claims *outside* the workers' compensation system." (Maj. opn., *ante*, at p. 377.) As such, the cited cases do not support the majority's decision to prohibit the consideration of extrinsic evidence, in direct contravention of our rules of contract interpretation. (See, e.g., Civ. Code, § 1647; *Hess, supra*, 27 Cal.4th at p. 527.)

Finally, the special nature of the workers' compensation system does not dictate a contrary result. As the majority correctly notes, we must construe the preprinted release form in light of "the public policy of protecting the injured worker against the unintentional loss of workers' rights." (Maj. opn., *ante*, at p. 378.) But the majority conveniently forgets that "[w]e have been particularly rigorous about strictly enforcing broad release language in workers' compensation settlements, because, in that context, [Workers' Compensation Appeals Board (WCAB)] oversight helps to ensure fairness." (*Jefferson, supra*, 28 Cal.4th at pp. 303–304.) Indeed, workers and their attorneys—and not employers—are in the best position to know what claims they plan to pursue as a result of a work-related injury. I therefore see no statutory or policy grounds for giving workers settling a workers' compensation claim greater protection than litigants settling any other claim. Accordingly, our long-standing rules of contract interpretation should govern our interpretation of preprinted release forms used in workers' compensation cases.

## II.

As described above, our rules of contract interpretation provide, in relevant part, that a "release of ' "[a]ll claims" ' [citations] covers claims that are not expressly enumerated in the release" absent "fraud, deception or similar abuse." (*Jefferson, supra*, 28 Cal.4th at p. 305.) Extrinsic evidence may, however, establish "that the release refers only to all claims *of a particular type*, and consideration of extrinsic evidence would be appropriate where . . . the parties know of a particular claim but do not refer to it expressly in their release. [Citation.]" (*Ibid.*) If no extrinsic evidence of a narrower construction exists, however, the release of "all claims and causes of action" must be given comprehensive scope. Otherwise, "it [would be] virtually impossible to create a general release that . . . actually achieve[d] its literal purpose." (*Winet, supra*, 4 Cal.App.4th at pp. 1172–1173.)

In this case, plaintiff Carolyn Claxton did not claim fraud, deception, or similar abuse. Thus, under our rules of contract interpretation, the ordinary and popular meaning of the language of the preprinted release form governs absent an ambiguity. (See Civ. Code, §§ 1639, 1644, 1649.) This language, by its terms, bars claims that are not expressly enumerated in the release—

including claims that fall outside the workers' compensation system. Indeed, by expressly barring *both* "claims and causes of action," the release necessarily encompasses more than just "claims" within the scope of the workers' compensation system. Otherwise, the release could have just barred "claims"—and not "causes of action."

Nonetheless, the extrinsic evidence establishes an ambiguity as to the scope of the release in this particular context. At the time plaintiff signed the release, both plaintiff and defendants knew of plaintiff's claim of sexual harassment in violation of the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.). Thus, the failure of the release to mention the FEHA claim creates a latent ambiguity (see *Solis, supra,* 94 Cal.App.4th at p. 360), and leaves unresolved the issue of whether the parties intended to release plaintiff's FEHA claim (see *Hess, supra,* 27 Cal.4th at p. 527 [holding that the failure of a release to mention an outstanding claim known to the parties establishes an ambiguity as to the scope of that release]). Absent extrinsic evidence establishing that the parties did not intend for the release to cover the FEHA claim, however, the ordinary and popular meaning of the language of the release controls and bars the claim. (See Civ. Code, §§ 1639, 1644.) Thus, to avoid summary judgment, plaintiff had to introduce extrinsic evidence demonstrating that the parties did not intend for the release to cover the FEHA claim. (See *Hess, supra,* 27 Cal.4th at p. 527; see also Civ. Code, § 1647.)

And plaintiff did so. First, the release describes plaintiff's injuries as "Psyche, left Lower Extremity." In doing so, the release apparently refers only to plaintiff's workers' compensation claim predicated on her knee injury and the injury to her psyche caused by that injury, and implicitly excludes the injury to her psyche caused by the alleged sexual harassment. Second, the release contains a waiver of prospective rehabilitation services with the requisite finding by the workers' compensation judge. (See Lab. Code, former § 4646.) The presence of this waiver suggests that the parties contemplated the possibility of additional damages not covered by the workers' compensation scheme and specifically chose to exclude plaintiff's FEHA claim from the scope of the release. Third, the release only covers claims against defendant Pacific Maritime Association, plaintiff's employer, and does not include claims against the alleged harasser Ray Waters—a named defendant in the FEHA action. The release's failure to mention one of the named defendants in the FEHA action suggests that the parties did not intend for the release to cover the FEHA claim. Finally, the WCAB order approving the settlement states that it was only "settling this case." By expressly limiting the settlement to "*this* case," the order suggests that the release covered only

plaintiff's workers' compensation cases and no other cases in existence at that time—such as plaintiff's FEHA action already filed in state court. Viewed in its totality, this evidence establishes a triable issue as to whether the parties intended for the release to encompass plaintiff's FEHA cause of action. Accordingly, I join the majority in affirming the judgment of the Court of Appeal, reversing summary judgment in favor of defendants.

On September 15, 2004, the opinion was modified to read as printed above.