[No. F057718. Fifth Dist. Sept. 30, 2011.]

COUNTY OF KERN, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, ERIC PETERSEN,
et al., Respondents.

510

512

## COUNSEL

Theresa A. Goldner, County Counsel, Margo A. Raison, Chief Deputy County Counsel, and David T. Ungar, Deputy County Counsel, for Petitioner.

No appearance for Respondent Workers' Compensation Appeals Board.

Eric Petersen, in pro. per., for Respondent.

Christopher Jagard for Respondent California Department of Industrial Relations.

Lewis, Marenstein, Wicke, Sherwin & Lee, Allison E. Barrett and Robert J. Sherwin for California State Firefighters' Association as Amicus Curiae on behalf of Respondent Eric Petersen.

## OPINION

**THE COURT.**[*]— This court granted a petition for writ of review filed by the County of Kern (Kern) to inquire into and determine whether the Workers' Compensation Appeals Board (WCAB) erred in concluding a volunteer firefighter with a local nonprofit firefighting organization was a county employee for purposes of workers' compensation coverage within the meaning of Labor Code section 3361.[1] (§ 5950; Cal. Rules of Court, rule 8.495.) Kern contends it never provided the organization with either the "official recognition" or "full or partial support" required under section 3361 to invoke its workers' compensation liability. We reject Kern's request to impose recognition and support requirements that are more burdensome than set forth under the plain language of the statute, and therefore agree with the WCAB that Kern is the statutory employer. As not yet addressed by the WCAB, we make no determination as to whether the volunteer firefighter here was industrially injured or if Kern effectively limited its coverage responsibility through its contractual agreement with the volunteer firefighters organization.

## BACKGROUND

Respondent Eric Petersen was the deputy fire chief of the Sand Canyon Volunteer Fire Department (SCVFD). SCVFD is comprised of approximately 32 unpaid firefighters who actively protect the 21-square-mile unincorporated Sand Canyon area within Kern. Sand Canyon lies approximately 40 miles

---

[*]Hill, P. J., Wiseman, J., and Kane, J.

[1] Further statutory references are to the Labor Code unless otherwise stated.

southeast of Bakersfield and 32 miles north of Tehachapi, where it can take 45 minutes for the Kern County Fire Department (KCFD) to respond.

Although volunteer fire departments were more common in the past, SCVFD is now the only volunteer fire department in Kern. SCVFD is classified as a nonprofit organization under the federal Internal Revenue Code with an independent board of directors. It is organized as a volunteer fire department under state law (Health & Saf. Code, § 14825 et seq.), submits to recertification from the state with Kern's assistance every two years, and trains its chief and members as mandated by the state and Kern. According to SCVFD Chief William Bender, Kern supplied SCVFD with thousands of dollars worth of fire equipment in the late 1990's. Kern also installed a dip tank to supply water both to a KCFD helicopter and to the SCVFD's fire station.

On June 19, 2007, the Kern administrative officer, Kern board of supervisors chairman, Kern assistant county counsel, and SCVFD president executed an "Agreement for Donation toward Equipment Purchase for the Sand Canyon Volunteer Fire Department" (Donation Agreement). Immediately after setting forth the parties, the Donation Agreement declared that "the Board of Supervisors of the County desires to encourage and facilitate the development of the Sand Canyon Volunteer Fire Department to protect the life and property of approximately 1,500 citizens of Sand Canyon in Kern County . . . ." The agreement acknowledged that SCVFD "has been actively serving the twenty-one square-mile community of Sand Canyon since 1997 . . . ."

The Donation Agreement established that Kern would provide $41,160 for SCVFD to erect a steel structure to house two fire engines, equip and maintain two donated fire engines, provide online training courses to volunteer firefighters, purchase emergency medical equipment, and facilitate response to fires, traffic collisions, and medical emergencies. In the agreement, SCVFD acknowledged that it is "an independent contractor and not an agent or employee of the County." SCVFD also agreed it would "secure and maintain" its own workers' compensation insurance "in accordance with applicable state law," and that it would indemnify Kern against any liability arising out of "any workers' compensation claim or suit arising from or connected with any services performed pursuant to this Agreement." Although SCVFD obtained health and safety insurance, including medical care coverage, it never obtained a workers' compensation insurance policy.

Petersen and Bender met with Kern's county counsel, Bernard C. Barmann, Sr., in May 2008 seeking clarification that Kern was providing SCVFD with workers' compensation coverage pursuant to section 3361, which provides that qualified volunteer firefighters are employees of the county, city, town, or district where the department is located for workers' compensation purposes.[2] According to Bender, Barmann assured the SCVFD representatives that "they were covered" and told them "to continue to fight fires and save lives." After asking for confirming documentation, however, SCVFD instead received a June 23, 2008, letter from Barmann disputing Kern's workers' compensation obligations pursuant to both section 3361 and the terms of the Donation Agreement. The following day, KCFD Chief Dennis L. Thompson wrote Bender explaining that Kern would provide the volunteer firefighters with workers' compensation coverage only if SCVFD dissolved as a legal entity and its members applied for, and were accepted into, Kern's reserve firefighters program under the direction and control of KCFD.

The following month, Petersen filed two workers' compensation claims alleging he injured his right ankle stepping off a fire truck on November 1, 2007, and his head during an assault while responding to a call for assistance on July 16, 2008. Petersen was 71 years of age at the time of his first alleged injury and 72 years of age at the time of the second.

After a hearing in November 2008 limited to employment, coverage, and evidentiary matters, the workers' compensation administrative law judge (WCJ) concluded Petersen was a statutory employee of Kern at the time of the injuries and that he was not an independent contractor because SCVFD volunteers deferred "essentially complete control over the mode and manner of their work at fire scenes" to the Kern Fire Department. The WCJ clarified, however, that the question whether Kern effectively delegated its responsibilities to obtain workers' compensation coverage for the SCVFD per the Donation Agreement, and any consequences flowing from SCVFD's failure to obtain its own policy, if required, had not yet been presented for decision. The WCJ also did not address whether Petersen actually sustained either alleged injury on an industrial basis. Acknowledging that neither Kern nor SCVFD had secured workers' compensation coverage for Petersen, the WCJ further concluded the Uninsured Employers Benefit Trust Fund (UEBTF) was appropriately joined as a defendant.[3]

---

[2] Despite a lack of actual earnings, volunteer firefighters are deemed to have earned the maximum average weekly earnings rate in calculating workers' compensation temporary and permanent disability awards. (§ 4458.)

[3] Formerly known as the California Uninsured Employers Fund (UEF), the UEBTF "was created by the Legislature in 1971 'to ensure that workers who happen to be employed by

Kern subsequently petitioned for reconsideration, which the WCAB summarily denied by adopting and incorporating the WCJ's report and recommendation. After Kern petitioned for a writ of review, the WCAB reaffirmed its decision denying reconsideration in briefing to this court. The UEBTF and amicus curiae California State Firefighters Association (CSFA) have also filed briefs in support of the WCAB's decision finding Petersen an employee of Kern for workers' compensation purposes. Petersen passed away shortly before oral argument before this court.

## DISCUSSION

Kern contends that in adopting the WCJ's findings, the WCAB erroneously construed section 3361 regarding the treatment of volunteer firefighters as county employees for purposes of workers' compensation, leading to an inequitable, unreasonable, and absurd result with far-reaching negative policy implications.[4] Characterizing the WCAB's decision as unjustly imposing SCVFD's workers' compensation liability on Kern because it voluntarily entered into the Donation Agreement, Kern contends the WCAB's application of section 3361 here unfairly thwarts liability on an unsuspecting local government that simply provided some minimal support to a volunteer fire department. Suggesting counties are immune from state-imposed unfunded mandates, Kern believes the Legislature could not have intended to impose such a hardship on counties without their formal consent. Kern therefore asks this court to nullify the WCAB's finding of potential liability under section 3361 due to the "ripple effect that will impact many public entities and many other volunteer fire departments."

### A. *Standard of Review*

To the extent Kern disputes the WCAB's factual findings, those findings are final and conclusive and not subject to appellate review if supported by substantial evidence in light of the entire record. (§§ 5952, 5953; *LeVesque v. Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627, 637 [83 Cal.Rptr. 208, 463 P.2d 432].) Substantial evidence must be reasonable in nature, credible, and of solid value such that a reasonable mind might accept it as adequate to support a conclusion. (*Braewood Convalescent Hospital v. Workers' Comp.*

---

illegally uninsured employers are not deprived of workers' compensation benefits . . . .'" (*Duncan v. Workers' Comp. Appeals Bd.* (2008) 166 Cal.App.4th 294, 297 [82 Cal.Rptr.3d 664].)

[4] Kern does not dispute the WCAB's conclusion that Petersen, as a volunteer firefighter under the direction and control of KCFD, was not an independent contractor.

*Appeals Bd.* (1983) 34 Cal.3d 159, 164 [193 Cal.Rptr. 157, 666 P.2d 14].) In examining the entire record, this court "may not simply isolate evidence which supports or disapproves the board's conclusions and ignore other relevant facts which rebut or explain the supporting evidence . . . ." (*Ibid.*)

It is within this court's duty to decide, however, whether the undisputed facts and those found by the WCAB, which are supported by substantial evidence, fall within the ambit of a statutory provision. (*Keulen v. Workers' Comp. Appeals Bd.* (1998) 66 Cal.App.4th 1089, 1096 [78 Cal.Rptr.2d 500].) Where, as here, the meaning and application of a statute is in dispute, our first task "is to ascertain the intent of the Legislature so as to effectuate the purpose of the law." (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386 [241 Cal.Rptr. 67, 743 P.2d 1323].) Legislative intent " 'is generally determined from the plain or ordinary meaning of the statutory language, unless the language or intent is uncertain.' " (*Marsh v. Workers' Comp. Appeals Bd.* (2005) 130 Cal.App.4th 906, 914 [30 Cal.Rptr.3d 598], quoting *Rea v. Workers' Comp. Appeals Bd.* (2005) 127 Cal.App.4th 625, 641 [25 Cal.Rptr.3d 828].) We also must "give great weight to the construction of the WCAB, unless it is clearly erroneous or unauthorized." (*Honeywell v. Workers' Comp. Appeals Bd.* (2005) 35 Cal.4th 24, 34 [24 Cal.Rptr.3d 179, 105 P.3d 544].) Lastly, we adhere to the overriding principle that "all workers' compensation statutes are to be liberally construed in favor of the injured worker." (*Claxton v. Waters* (2004) 34 Cal.4th 367, 373 [18 Cal.Rptr.3d 246, 96 P.3d 496], citing § 3202.)

B. *Obligation to Secure Workers' Compensation for Injured "Employee"*

The California Constitution vests the Legislature with unlimited plenary power to create and enforce a complete system of workers' compensation to compensate workers for injury in the course of employment, irrespective of fault. (Cal. Const., art. XIV, § 4; *DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 388 [20 Cal.Rptr.2d 523, 853 P.2d 978].) All employers in California, including local governments, must "secure the payment of compensation" either from an authorized insurer or by obtaining a certificate of self-insurance from the Director of Industrial Relations. (§ 3700.) "Compensation" is defined as "every benefit or payment conferred . . . upon an injured employee" under the Labor Code's workers' compensation and insurance provisions. (§ 3207.) A county government thus must secure workers' compensation coverage for an injured employee.

Under the Workers' Compensation Act, coverage only extends to injuries suffered by an "employee." (§§ 3600, 3700; *S. G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341, 349 [256

Cal.Rptr. 543, 769 P.2d 399].) For workers' compensation purposes, the term "employee" refers to "every person in the service of an employer under any appointment or contract of hire or apprenticeship, express or implied, oral or written, whether lawfully or unlawfully employed, and includes" enumerated classes of workers. (§ 3351; see also § 3351.5.) Thus, "[a]ny person rendering service for another, other than as an independent contractor, or unless expressly excluded herein, is presumed to be an employee." (§ 3357.) Among those expressly excluded from the term employee, and therefore from an employer's obligation to secure for the payment of workers' compensation coverage, are those "performing voluntary service for a public agency or a private, nonprofit organization who receives no remuneration for the services other than meals, transportation, lodging, or reimbursement for incidental expenses." (§ 3352, subd. (i).)

Notwithstanding the general proposition that most public agency and nonprofit organization volunteers fall outside the definition of employees for workers' compensation liability, a special statutory provision applies to volunteer firefighters. Section 3361 provides: "Each member registered as an active firefighting member of any regularly organized volunteer fire department, having official recognition, and full or partial support of the government of the county, city, town, or district in which the volunteer fire department is located, is an employee of that county, city, town, or district for the purposes of this division, and is entitled to receive [workers'] compensation from the county, city, town or district in accordance with the provisions thereof."

Kern agrees SCVFD is a "regularly organized volunteer fire department" because SCVFD properly complied with the certificate filing requirements allowing it to serve as a fire company in an unincorporated town pursuant to Health and Safety Code sections 14825 to 14831.[5] Kern argues, however, that in finding Petersen to be an employee of the county within its workers' compensation coverage responsibility, the WCAB misconstrued section 3361's threshold requirements that the provision applies only to members of volunteer fire departments "having official recognition, and full or partial support of the government of the county." Suggesting extremely narrow definitions to the terms within the statute, Kern contends it never provided SCVFD either "official recognition" or "full or partial support," thus removing SCVFD as a qualified "regularly organized volunteer fire department" from within the ambit of section 3361's workers' compensation liability.

█ While we agree with Kern that the requirements of "official recognition" and "full or partial support" are subject to some degree of interpretation

---

[5] Although not applicable here, a community may also establish a fire protection district under Health and Safety Code section 13800 et seq.

and could have been better defined in the statute, the WCAB's application of those terms under the facts presented here is well supported by the evidence. After all, "[w]ords do not have fixed meanings; they are symbols of thought whose meanings vary depending upon the context and circumstances in which they are used." (*Henry v. Workers' Comp. Appeals Bd.* (1998) 68 Cal.App.4th 981, 984 [80 Cal.Rptr.2d 631].) But without a statutory definition of the terms in question, we first look to " ' "the usual, ordinary import of the language employed . . . ." ' " (*DuBois v. Workers' Comp. Appeals Bd.,* *supra,* 5 Cal.4th at pp. 387–388.) In attempting to ascertain the meaning of a word in a statute, we refer to common dictionary definitions. (*Wasatch Property Management v. Degrate* (2005) 35 Cal.4th 1111, 1121–1122 [29 Cal.Rptr.3d 262, 112 P.3d 647]; *People v. Leal* (2004) 33 Cal.4th 999, 1009 [16 Cal.Rptr.3d 869, 94 P.3d 1071].)

### C. *"Official Recognition"*

In adopting the WCJ's recommendation, the WCAB concluded that the term "official recognition" effectively encompasses any governmental entity acknowledging that the fire department existed. Indeed, the WCAB found SCVFD had been officially recognized within the meaning of section 3361 by all three levels of government: Kern, the state, and the federal government.

Kern contends SCVFD was not "officially recognized" within the meaning of section 3361 because the county never provided a resolution or memorandum of understanding from its board of supervisors formally recognizing SCVFD as a volunteer fire department for workers' compensation purposes. Kern effectively contends that the county alone maintained the exclusive power to recognize SCVFD, and since it has not adopted such an explicit resolution, it never accepted the obligation to cover volunteer firefighters for their industrial injuries.[6]

The word "official" is defined, in pertinent part, as "relating to an office or post of authority" or "[a]uthorized by a proper authority." (Webster's II New College Dict. (2001) p. 760.) The definition of the word "recognize" includes to "identify or know from previous experience or knowledge," and to "perceive or acknowledge the validity or reality of." (*Id.* at p. 926.) The two definitions

---

[6] In a request for judicial notice, Kern offered this court various documents and Internet citations purporting to demonstrate that other cities and counties have adopted formal agreements officially acknowledging volunteer fire departments for purposes of workers' compensation. As the documents and Internet citations do not assist the court in interpreting the minimum requirements under section 3361, and most were expressly excluded from the record by the WCJ, the request is denied. (Evid. Code, §§ 350, 352, 451–452.) And while no formal request has been made, documents submitted by Petersen not before the WCAB are similarly excluded from the record before this court.

combined reasonably result in a meaning of "official recognition" under section 3361 referring to governmental identification or acknowledgment of the existence of a regularly organized volunteer fire department.

Indeed, the Court of Appeal in *Machado v. Hulsman* (1981) 119 Cal.App.3d 453 [173 Cal.Rptr. 842] similarly applied a broad interpretation of section 3361's terms towards extending workers' compensation coverage by concluding that a volunteer firefighter fell within the workers' compensation laws and was precluded from filing a separate personal injury action. Without a more precise definition of the term "registered firefighter" in the statute, the court concluded the volunteer fire department's "Record of Fires" log listing the volunteer as having responded to and participated in six emergency calls sufficiently met the registration requirement. (119 Cal.App.3d at pp. 455–456.) As the court explained, "[s]ince no particular form of registration is mandated by section 3361, a liberal interpretation of its terms encompasses the district's 'Record of Fires.' " (*Id.* at p. 456.)

We must also determine what governmental entity qualifies as providing official recognition under section 3361. As the WCJ noted in the report and recommendation to the WCAB, Kern conceded in its petition for reconsideration that grammatically, section 3361 "makes it appear that only full or partial support must come from the local government entity in which the volunteer fire department is located, while 'recognition' may come from virtually any government entity." Kern argues that recognition by the state or federal government would be contrary to both "common sense" and the near-identical language of section 3362 relating to police officers, which omits section 3361's comma following the word "recognition" in defining an employee as "an active policeman or policewoman of any regularly organized police department having official recognition and full or partial support of the government of the county, city, town or district in which such police department is located . . . ."[7] Relying on *Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 743–744 [110 Cal.Rptr.2d 828, 28 P.3d 876] (*Renee J.*), Kern notes that when a statute is capable of more than one interpretation, the courts " ' "must . . . choose that which most comports with the intent of the Legislature." ' "

---

[7] Section 3362 provides in full: "Each male or female member registered as an active policeman or policewoman of any regularly organized police department having official recognition and full or partial support of the government of the county, city, town or district in which such police department is located, shall, upon the adoption of a resolution by the governing body of the county, city, town or district so declaring, be deemed an employee of such county, city, town or district for the purposes of this division and shall be entitled to receive [workers'] compensation from such county, city, town or district in accordance with the provisions thereof."

■ We agree with Kern that a plain reading of section 3361 does not limit "official recognition" to only the local government where the fire department is located, but disagree that common sense requires this court to carry over a "county, city, town or district" recognition requirement from section 3362. ■ As repeated in *Renee J.*, we must give significance " ' " ' "to every word, phrase, sentence and part of an act in pursuance of the legislative purpose." ' " ' " (*Renee J., supra*, 26 Cal.4th at p. 743.) ■ Particularly relevant, " 'A longstanding rule of statutory construction—the "last antecedent rule"—provides that "qualifying words, phrases and clauses are to be applied to the words or phrases immediately preceding and are not to be construed as extending to or including others more remote." ' " (*Ibid.*) Yet an exception to the last antecedent rule "provides that when several words are followed by a clause that applies as much to the first and other words as to the last, ' " 'the natural construction of the language demands that the clause be read as applicable to all.' " ' " (*Ibid.*)

■ The question here is whether the phrase "of the government of the county, city, town, or district in which the volunteer fire department is located" in section 3361 can reasonably be read to modify not only the last antecedent, "full or partial support," but also to the earlier antecedent, "official recognition." In our view of section 3361, the phrase only modifies the last antecedent to which the phrase is a part. As this court has previously noted " '[e]vidence that a qualifying phrase is supposed to apply to all antecedents instead of only to the immediately preceding one may be found in the fact that it is separated from the antecedents by a comma.' " (*Lingenfelter v. County of Fresno* (2007) 154 Cal.App.4th 198, 207 [64 Cal.Rptr.3d 378].) ■ Lacking a comma offsetting it from "full or partial support," the local government qualifying phrase can only reasonably be deemed to modify "support."

Despite Kern's contention to the contrary, comparison to section 3362 bolsters our conclusion that the Legislature did not intend to restrict "official recognition" under section 3361 to only the county, city, town, or district recognition in which the volunteer fire department is located. In section 3362 establishing active police officers as statutory employees, the comma appearing in the same phrase in section 3361 between "official recognition" and "full or partial support" was omitted, thereby permitting the local government phrase to modify *both* support and recognition. Section 3362 supports the grammatical distinction by further clarifying that official recognition of active police officers must be derived locally by adding that the statute applies

"upon the adoption of a resolution by the governing body of the county, city, town or district so declaring," while section 3361 carries no such resolution requirement.[8]

Considering the distinction between the types of employees described in sections 3361 and 3362, we also cannot conclude that "common sense" mandates equal application of the recognition requirements where the statutory language differs. Section 3362 applies to officers of "any regularly organized police department," while section 3361 to members of "any regularly organized *volunteer* fire department." (Italics added.) While the record does not reveal whether volunteer police departments are common or even exist in California, we recognize an inherent distinction between fighting crime and fighting fires where more direct, local control may be warranted over peace officers. We cannot conclude the Legislature necessarily intended the same treatment under both statutes so as to read into section 3361 a condition that only the local government, rather than the state, may officially recognize a volunteer fire department before invoking workers' compensation coverage liability.

Notwithstanding our conclusion that the state or federal government *may* provide official recognition of a regularly organized fire department within the meaning of section 3361, we agree with Kern that the federal government's mere approval of SCVFD's status as a nonprofit organization under the Internal Revenue Code was insufficient to trigger application of the provision because there is no evidence the federal government recognized SCVFD specifically as a "regularly organized volunteer fire department." As to local and state recognition, however, the WCAB pointed to undisputed evidence that SCVFD is chartered as a volunteer fire department, and that its members are certified and trained, under state law with Kern's direct assistance. Kern goes to great lengths to delegitimize the statewide process for organizing a volunteer fire department as a mere ministerial procedure requiring the filing of documents with either the county recorder or, following amendment in 2009, a county's designated Fire and Rescue Operational Area Coordinator. (Health & Saf. Code, § 14825.) Kern argues that it is absurd to subject the county to potential liability for injuries sustained by volunteers

---

[8] Indeed, the Legislature saw fit to include local governing board resolution requirements as prerequisites to finding numerous other classes of volunteers as statutory employees. In addition to active police officers under section 3362, volunteer recreation and park workers (§ 3361.5), reserve sheriff's officers (§ 3364), public agency volunteers (§ 3363.5), private nonprofit volunteers (§ 3363.6), school district volunteers (§ 3364.5), and juvenile ward rehabilitative workers (§§ 3364.55, 3364.6, 3364.7), are deemed statutory employees for purposes of workers' compensation only if the local governing body so declares by resolution.

over whom the county has no control, pointing to what was formerly its inability to "regulate the formation and continued existence of fire companies." (Health & Saf. Code, § 14831; see also *id.*, § 14832.) Effective July 9, 2010, however, Kern obtained statutory authority to regulate the formation and confirmed existence of volunteer fire companies. (Stats. 2010, ch. 67, § 1.)

While perhaps demonstrating a long-overdue need for legislative change before the recent amendment to Health and Safety Code section 14831, Kern's policy argument does not constitute grounds to alter section 3361's definition of an officially recognized volunteer fire department by imposing a local board of supervisors or governing board resolution requirement. If the Legislature had intended such a condition be met before imposing workers' compensation liability on a county with a volunteer fire department, it easily could have been included as section 3361.5 provides for recreation and park district volunteers.[9]

Even if this court were to accept Kern's position that only "a county, city, town, or district in which the volunteer fire department is located" may voluntarily acknowledge a volunteer fire department as a condition precedent in applying section 3361, we find substantial evidence in the record that Kern in fact provided sufficient acknowledgment amounting to official recognition. The Donation Agreement between Kern and SCVFD—signed by Kern's chairman of the board of supervisors, county administrative officer, and assistant county counsel—undeniably acknowledged SCVFD as a volunteer fire department, and provided:

"WHEREAS, the Board of Supervisors of the County desires to encourage and facilitate the development of the Sand Canyon Volunteer Fire Department to protect the life and property of approximately 1,500 citizens of Sand Canyon in Kern County; and

"WHEREAS, the Sand Canyon Volunteer Fire Department has been actively serving the twenty-one square-mile community of Sand Canyon since 1997 . . . ."

---

[9] Section 3361.5 provides: "Notwithstanding Section 3351, a volunteer, unsalaried person authorized by the governing board of a recreation and park district to perform volunteer services for the district shall, *upon the adoption of a resolution of the governing board of the district so declaring*, be deemed an employee of the district for the purposes of this division and shall be entitled to the workers' compensation benefits provided by this division for any injury sustained by him or her while engaged in the performance of any service under the direction and control of the governing board of the recreation and park district." (Italics added.)

In addition, Kern and SCVFD mutually agreed in the Donation Agreement that SCVFD would use Kern's funds to "facilitate initial response to fires and traffic collisions and provide emergency medical aid to the citizens of Sand Canyon in Kern County."

The Donation Agreement is more than an acknowledgment of SCVFD's existence, as it recognizes SCVFD's role in providing emergency services within Kern. Pointing out the unreasonableness of Kern's position that it never officially recognized SCVFD as a volunteer fire department, the WCJ advised the WCAB:

"In other words, in all seriousness, Petitioner is contending that it certified and recertified SCVFD at biannual intervals from 1997 to the present without ever officially recognizing it. Petitioner is contending that, on at least two occasions, it donated significant amounts of public funds to an organization it does not officially recognize. Petitioner is contending that it shares access to a fire station and a water supply with an organization that it does not officially recognize. Petitioner is contending it entered into a written contractual relationship (the Donation Agreement) with SCVFD by which it identified the SCVFD by name, praised its efforts, provided it with resources to continue its valuable work, set up systems of accountability to ensure proper use of public funds, encouraged SCVFD to continue its valuable efforts, but did not thereby officially recognize the SCVFD.

"To the contrary, it is felt that any one of the above-described events represented official recognition of SCVFD by Petitioner Kern County."

We also must agree with the WCAB that any of the above factors alone—and certainly in combination—supports the WCAB's finding that SCVFD had been officially recognized for purposes of section 3361.

### D. *"Full or Partial Support"*

█ Kern also denies it afforded "full or partial support" to SCVFD within the meaning of section 3361 because it did not provide regular and consistent financial funds necessary for SCVFD's continued existence. Like the WCAB, we find no requirement in section 3361 that support must be ongoing, or even that it must be financial in nature. Indeed, in the context of section 3361, "support" may mean "to provide for, by supplying with money or necessities," or arguably even to "aid the cause of by approving, favoring, or advocating." (Webster's II New College Dict., *supra*, at p. 1108.) As the WCJ reported to the WCAB: █ "The Legislature is presumed to employ American English with facility such that the meaning of statutes is derived from their plain meaning of the statutory language. █ 'Full or

partial support' is a disjunctive and inclusive phrase; either type of support is sufficient. The language of the statute does not indicate any other requirement on the nature of the support. Therefore, such a requirement does not exist."

Here, the WCAB found Kern provided SCVFD at least three forms of support: the $41,160 acknowledged in the Donation Agreement, the use of a county "dip-tank" to provide water to the volunteer fire station and its fire engines, and biannual recertification of SCVFD enabling SCVFD to continue operating as a fire department. Kern does not dispute it provided such benefits to SCVFD, but instead contends they did not amount to even "partial support." We can find no merit in Kern's position that section 3361 only becomes applicable once a local jurisdiction first provides some undefined higher level of ongoing financial support. Here, Kern provided SCVFD with funds and donated use of equipment the year before Kern disputed its workers' compensation liability. The WCAB's finding of support is well supported by the evidence.

## CONCLUSION

█ Substantial evidence supports the WCAB's finding that SCVFD constitutes a "regularly organized volunteer fire department, having official recognition" within the plain meaning of section 3361. Although Kern implies the WCAB's interpretation of section 3361 subjects it to unreasonable liability to secure workers' compensation for a band of untrained and unorganized volunteers over which it has no control, the evidence instead indicates Kern "desire[d] to encourage and facilitate" the SCVFD for the protection and benefit of its citizens. Kern fails to offer any persuasive legal basis for this court to read additional requirements into section 3361 mandating that a county adopt a formal agreement or resolution expressly accepting workers' compensation liability before the statutory provision applies. Nor does this court find any grounds to require a local government to provide some unknown minimum level of continuing support to a volunteer fire department before deeming a volunteer firefighter a county employee for workers' compensation coverage.

█ Kern's request to override section 3361's definition of an "employee" lies outside the scope of appellate review, as it essentially asks this court to determine whether the expense of securing workers' compensation coverage for volunteer firefighters exceeds the costs of either hiring paid firefighters or doing without any such emergency services. Finding nothing ambiguous in section 3361, "We will not second-guess the Legislature's objective and design." (*Marsh v. Workers' Comp. Appeals Bd., supra*, 130 Cal.App.4th at p. 917.)

## DISPOSITION

The order of the WCAB denying reconsideration is affirmed, and costs before this court are awarded to respondent Eric Petersen. (Cal. Rules of Court, rule 8.493(a)(1)(A).) The matter is remanded for further proceedings consistent with this opinion and the report and recommendation adopted and incorporated by the WCAB.