Filed 11/20/13  In re S.F. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re S.F., a Person Coming Under the Juvenile Court Law. | H039612 (Santa Cruz County Super. Ct. No. DP002635) |
| SANTA CRUZ COUNTY HUMAN SERVICES DEPARTMENT, Plaintiff and Respondent, v. D.S. et al. Defendants and Appellants. | |

After S.F. (the minor) was placed in protective custody on the date she was born (in April 2012), the Santa Cruz County Human Services Department (Department) filed a petition alleging the failure of the minor's mother, D.S., and father, R.F., to protect and provide support for their daughter, under Welfare and Institutions Code section 300, subdivision (b).[1]  It was alleged in the petition, inter alia, that Mother and Father were homeless; Mother had untreated mental health and anger issues; and Father had a history of mental health issues and untreated substance abuse issues.  On July 18, 2012, the court

---

[1] Further statutory references are to the Welfare and Institutions Code unless otherwise stated.

sustained the petition, ordered family reunification services for Mother, but denied reunification services for Father. Mother's reunification services were later terminated by the court, and after a contested permanency hearing on May 8, 2013, the court found the minor to be adoptable and ordered the termination of Mother's and Father's parental rights.

Mother and Father (collectively, Appellants) appeal from the permanency order. They contend that the juvenile court erred (1) in ordering that the Department had fully complied with the notice provisions of the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.; ICWA), and (2) in concluding that the ICWA did not apply. They assert that the notice was defective because the Department failed to provide it to the Fort McDowell Yavapai Nation. We conclude that there was no ICWA error. Accordingly, we will affirm the order declaring adoption as the permanent plan for the child, S.F., and terminating the parental rights of Mother, D.S., and Father, R.F.

FACTS AND PROCEDURAL HISTORY

I.      *Initial May 2012 Petition and Detention Order*

On May 1, 2012, the Department filed a petition alleging that the parents had failed to protect the minor. (§ 300, subd. (b).) The Department alleged, inter alia, that (1) Mother and Father were homeless; (2) Mother had mental health issues (seizure disorder, mood disorder, polysubstance abuse, and borderline personality disorder) that significantly impaired her ability to protect her newborn child, the minor; (3) Mother had "had an increase in auditory hallucinations and [was] physically aggressive with the alleged father"; (4) in November 2011 and again in March 2012, Mother had been hospitalized because of wanting to harm herself or others; (5) Mother had untreated substance abuse issues (having tested positive for marijuana at the time she gave birth to the minor, and having tested positive for marijuana and methamphetamine while she was pregnant; (6) Father had untreated mental health issues (depression and psychosis) that

2

significantly impaired his ability to parent the minor; and (7) Father had untreated substance abuse issues which related to his "multiple drug[-]related and violent conduct arrests and convictions." The minor was placed in protective custody on the day she was born in April 2012.

On May 12, 2012, the court ordered the minor detained pursuant to section 319, subdivision (a). Based upon Mother's indication of Indian heritage, the court found the possible applicability of the ICWA.

II.      *Report and Jurisdictional Hearing*

In its June 2012 jurisdiction/disposition report, the Department repeated the allegations concerning the parents found in the initial petition, including additional details concerning their mental health and substance abuse issues, and their criminal arrest and conviction history. The Department noted that the ICWA might apply based upon Mother's having reported Indian heritage in her family. The Department recommended that the minor remain in out-of-home care; Mother be offered family reunification services; and Father not be offered reunification services.

On July 18, 2012, after a jurisdictional hearing attended by Mother and Father, the court found the allegations in the petition true and sustained the petition. It declared the minor a dependent child of the juvenile court; ordered that placement and care of the minor be vested with the Department; ordered family reunification services be provided to Mother; and ordered that no reunification services be provided to Father.

III.      *December 2012 Order Terminating Reunification Services*

The Department filed a request to change order under section 388 on November 9, 2012, seeking termination of reunification services for Mother. It alleged that two professionals, who had each conducted psychological evaluations of Mother, had concluded that (1) Mother suffered from a mental incapacity that rendered her incapable of utilizing family reunification services, and (2) services were not available that would

3

assist Mother in her being able to adequately care for the minor. The court terminated Mother's family reunification services on December 6, 2012.

IV. *March 2013 Assessment Under Section 366.26*

On March 28, 2013, the Department filed its assessment, pursuant to section 366.26. The Department reviewed, inter alia, the minor's physical and emotional condition, indicating that she was in good health, had no special needs, and was described by her caregiver as appearing to "be a happy baby who loves to explore . . . [is] curious and strong."

The Department reviewed the history of visitation by the parents. After the court, in August 2012, ordered supervised visitation of three times per week for Mother and once per month for Father, the parents "attended most visits until 10/22/12, when [Mother] began to cancel visitation. She then stopped contact with the Parent Center where the visits were happening. [Mother] and [Father] have not contacted the caregivers for [the minor] since this time."

The assessment also included a review of the minor's foster care status. The minor had been living in San José with the same foster family since July 2012. One member of the foster family had taken eight months leave from work to assume primary caregiving responsibility. The foster parents expressed that they were willing and fully committed to adopting the minor.

The Department opined that the minor was generally and specifically adoptable. It recommended that the parental rights of Mother and Father be terminated and that a permanent plan of adoption be established.

V. *May 2013 Permanency Hearing*

At the selection and implementation (permanency) hearing on May 8, 2013, the court permitted submission of the March 28, 2013 report pursuant to section 366.26, a statement submitted by the caregivers, and the parents' visitation logs. Neither parent presented testimony. The court heard argument by counsel for the Department, the

4

minor, Mother, and Father. The court found by clear and convincing evidence that the minor was both generally and specifically adoptable, and approved the permanent plan of adoption. The court concluded further that there were no exceptions applicable in the case that would make it "detrimental [for the minor] to move forward with the highest level of permanency. Adoption is the highest level of permanency available for her." Accordingly, the court terminated the parental rights of Mother and Father. It set a permanent placement review hearing for November 5, 2013.

Mother and Father each filed timely notices of appeal. An order terminating parental rights and approving adoption as the permanent plan is one from which an appeal lies. (§ 366.26, subd. (i)(1); see *In re Matthew C.* (1993) 6 Cal.4th 386, 393, superseded by statute on another point as stated in *People v. Mena* (2012) 54 Cal.4th 146, 156.)

## DISCUSSION

I.    *Applicable Legal Principles*

Section 300 et seq. provides "a comprehensive statutory scheme establishing procedures for the juvenile court to follow when and after a child is removed from the home for the child's welfare. [Citations.]" (*In re Celine R.* (2003) 31 Cal.4th 45, 52.) As our high court has explained, "The objective of the dependency scheme is to protect abused or neglected children and those at substantial risk thereof and to provide permanent, stable homes if those children cannot be returned home within a prescribed period of time. [Citations.] Although a parent's interest in the care, custody and companionship of a child is a liberty interest that may not be interfered with in the absence of a compelling state interest, the welfare of a child is a compelling state interest that a state has not only a right, but a duty, to protect. [Citations.] The Legislature has declared that California has an interest in providing stable, permanent homes for children who have been removed from parental custody and for whom reunification efforts with

5

their parents have been unsuccessful.  [Citations.]  This interest is a compelling one. [Citation.]"  (*In re Marilyn H.* (1993) 5 Cal.4th 295, 307.)

After it has been adjudicated that a child is a dependent of the juvenile court, the exclusive procedure for establishing the permanent plan for the child is the permanency hearing as provided under section 366.26.  The essential purpose of the hearing is for the court "to provide stable, permanent homes for these children."  (§ 366.26, subd. (b); see *In re Jose V.* (1996) 50 Cal.App.4th 1792, 1797.)  There are six statutory choices for the permanency plan; the preferred choice is that the child be ordered to be placed for adoption, coupled with an order terminating parental rights.  (§ 366.26, subd. (b); see also *In re Celine R.*, *supra*, 31 Cal.4th at p. 53 ["Legislature has thus determined that, where possible, adoption is the first choice"]; *ibid*. [where child is adoptable, "adoption is the norm"].)  The court selects this option if it "determines . . . by a clear and convincing standard, that it is likely the child will be adopted."  (§ 366.26, subd. (c)(1).)

Thus, at the permanency planning hearing, "in order to terminate parental rights, the court need only make two findings:  (1) that there is clear and convincing evidence that the minor will be adopted; and (2) that there has been a previous determination that reunification services shall be terminated."  (*Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 249-250.)  "If the court determines it is likely the child will be adopted, certain prior findings by the juvenile court (e.g., that returning the child to the physical custody of the parent would create a substantial risk of detriment to the physical or emotional well-being of the child) shall constitute a sufficient basis for the termination of parental rights unless the juvenile court finds one of six specified circumstances in which termination would be detrimental [to the child]."  (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1522-1523, citing § 366.26, subd. (c)(1).)  The six specified circumstances in section 366.26, subdivision (c)(1)(B) may serve as compelling reasons for the court's electing not to terminate parental rights if it finds that such "termination would be detrimental to the child."  These circumstances are "actually *exceptions* to the general

6

rule that the court must choose adoption where possible." (*In re Celine R.*, *supra*, 31 Cal.4th at p. 53, original italics.)

    II.    *Compliance with the ICWA Notice Requirements*

        A.    *The ICWA*

"Congress has determined that, as a matter of federal policy, protective steps must be taken before an Indian child is removed [from the family home]." (*In re W.B.* (2012) 55 Cal.4th 30, 47.) The ICWA, enacted in 1978, is a codification of these protections (*ibid.*), and it is recognized and applied in California. (See, e.g., *In re Alice M.* (2008) 161 Cal.App.4th 1189, 1197.) Its purpose is to protect the interests of Indian children and to promote the stability and security of Indian tribes and families. (25 U.S.C. § 1902; see, e.g., *In re Elizabeth W.* (2004) 120 Cal.App.4th 900, 906.)

"Among the procedural safeguards imposed by the Act is the provision of notice to various parties." (*In re Levi U.* (2000) 78 Cal.App.4th 191, 196; accord, *In re O.K.* (2003) 106 Cal.App.4th 152, 156.) "Notice is a key component of the congressional goal to protect and preserve Indian tribes and Indian families. Notice ensures the tribe will be afforded the opportunity to assert its rights under the Act irrespective of the position of the parents, Indian custodian or state agencies." (*In re Kahlen W.* (1991) 233 Cal.App.3d 1414, 1421.) California implements the ICWA's notice requirements through statutes and court rules. (§§ 224-224.6, 290.1-297; Cal. Rules of Court, rules 5.480-5.487.)

The ICWA generally requires that notice be given "where the court knows or has reason to know that an Indian child is involved" in a dependency proceeding. (25 U.S.C. § 1912 (a); see *In re W.B., Jr.*, *supra*, 55 Cal.4th at p. 48.) State law similarly provides: "If the court, a social worker, or probation officer knows or has reason to know that an Indian child is involved" in the dependency proceeding, notice is required. (§ 224.2, subd. (a); *In re Alice M., supra,* 161 Cal.App.4th at p. 1197.) The federal act defines "Indian child" as "any unmarried person who is under the age of eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the

7

biological child of a member of an Indian tribe." (25 U.S.C., § 1903(4); see also [Welf. & Inst. Code,] § 224, subd. (c).) It need not be a certainty that the child is an "Indian child" to require the giving of an ICWA notice. (*In re Samuel P.* (2002) 99 Cal.App.4th 1259, 1266-1267; *In re Desiree F.* (2000) 83 Cal.App.4th 460, 471.) "The determination of a child's Indian status is up to the tribe; therefore, the juvenile court needs only a suggestion of Indian ancestry to trigger the notice requirement." (*In re Nikki R.* (2003) 106 Cal.App.4th 844, 848; but see *In re Jeremiah G.* (2009) 172 Cal.App.4th 1514, 1520 ["both the federal regulations and the California Welfare and Institutions Code require more than a bare suggestion that a child might be an Indian child"].)

The law also imposes a duty of inquiry. Pursuant to California law, both the court and the agency "have an affirmative and continuing duty to inquire whether a child . . . is or may be an Indian child" for ICWA purposes. (§ 224.3, subd. (a); see Cal. Rules of Court, rule 5.481(a); *In re K.M.* (2009) 172 Cal.App.4th 115, 118-119.) According to the federal guidelines, the court is required to " 'make inquiries to determine if the child involved is a member of an Indian tribe or if a parent of the child is a member of an Indian tribe and the child is eligible for membership in an Indian tribe.' " (*In re S.B.* (2005) 130 Cal.App.4th 1148, 1158, quoting 44 Fed.Reg. 67588 (Nov. 26, 1979), italics omitted.) "[The] ICWA's notice provisions open the door to the identification of a dependent child as an Indian child and to the tribe's right to intervene in the proceedings." (*In re Nikki R., supra,* 106 Cal.App.4th at pp. 852-853.)

"The juvenile court must determine whether proper notice was given under [the] ICWA and whether [the] ICWA applies to the proceedings. [Citations.]" (*In re I.W., supra,* 180 Cal.App.4th at p. 1530.) "We review the trial court's findings for substantial evidence. [Citation.]" (*In re E.W.* (2009) 170 Cal.App.4th 396, 404.) "Where there is reason to believe a dependent child may be an Indian child, defective ICWA notice is 'usually prejudicial' [citation], resulting in reversal and remand to the juvenile court so proper notice can be given." (*In re Nikki R., supra,* 106 Cal.App.4th at p. 850; see also *In*

*re I.W.*, *supra*, 180 Cal.App.4th at p. 1530 [defective ICWA notice will be deemed harmless if it would have ultimately been found that juvenile was not an Indian child and the ICWA was inapplicable].) In such instances, a court may order reversal with a limited remand to facilitate the giving of a proper ICWA notice. (*In re Veronica G.* (2007) 157 Cal.App.4th 179, 187.)

### B. *Background*

The Department asked Mother on March 30, 2012, if she had any Indian heritage. She reported that there was Indian heritage in her family, and she identified herself as being connected to the Navajo, Blackfeet, Apache, and Cherokee tribes. On May 2, 2012, the Department asked Father if he had any Indian heritage; he responded that there was no Indian heritage in his family.

An ICWA attachment to the social worker's report was filed on June 5, 2012. In that attachment, the Department indicated that, based upon Mother's disclosure of Indian heritage, it had sent a form notice of hearing (ICWA-030) to the Navajo, Blackfeet, Apache, and Cherokee tribes, to the Bureau of Indian Affairs, and to both parents.[2] The Department noted that, as of June 2012, it had received responses from five tribes; each of them had indicated that the minor was not a tribe member or eligible for membership.[3]

At a hearing on June 5, 2012, the court, noting there had been no appearances by Indian tribes, made a finding that the ICWA notice had been given in a timely manner as required by California Rules of Court, rule 5.482(a)(1).

-----

[2] The attachment listed the following 13 tribes to which ICWA notice was mailed: Blackfeet Tribe, Navajo Nation, San Carlos Apache Tribe, White Mountain Apache Tribe, Apache Tribe of Oklahoma, Jicarilla Apache Nation, Tonto Apache Tribal Council, Yavapai-Apache Nation, Fort Sill Apache Tribe of Oklahoma, Mescalero Apache Tribe, Cherokee Nation of Oklahoma, United Keetoowah Band of Cherokee Indians, and Eastern Band of Cherokee Indians.

[3] The five responding tribes were: Cherokee Nation, United Keetoowah Band of Cherokee Indians, Yavapai-Apache Nation, Tonto Apache Tribe, and Blackfeet Tribe.

9

The Department filed a supplemental ICWA attachment to social worker's report on October 11, 2012. It advised that, subsequent to the court's finding in June 2012 that proper notice under the ICWA had been given, the Department had received additional responses from seven tribes, each indicating that the minor was not a tribe member or eligible for membership.[4] No objection was made to this finding.

At a hearing on October 11, 2012, the court made a finding that twelve Indian tribes had responded that the minor was not eligible for tribe membership. It concluded that because no tribe had responded definitively to the ICWA notices within the time provided by law, the ICWA did not apply. No objection was made to this finding.

> C.     *Appellants Have Not Demonstrated Noncompliance with the ICWA*

> 1.     *The Claim Was Not Forfeited*

We address initially whether the claim of error is cognizable on appeal. It is not disputed that Appellants failed to raise below a question concerning the alleged inadequacy of the ICWA notice. Neither Mother nor Father objected to the court's June 5, 2012 order finding that the ICWA notices had been given in a timely manner. Likewise, Appellants did not object to the court's October 11, 2012 order concluding that the ICWA did not apply.

"The purposes of the notice requirements of [the ICWA] are to enable the tribe to determine whether the child is an Indian child and to advise the tribe of its right to intervene. The notice requirements serve the interests of the Indian tribes 'irrespective of the position of the parents' and cannot be [forfeited] by the parent." (*In re Samuel P.*, *supra*, 99 Cal.App.4th at p. 1267, quoting *In re Kahlen W.*, *supra*, 233 Cal.App.3d at p. 1421.) And as the court in *In re Marinna J.* (2001) 90 Cal.App.4th 731, 739 explained,

---

**4** The seven responding tribes were: White Mountain Apache Tribe, Fort Sill Apache Tribe of Oklahoma, San Carlos Apache Tribe, Mescalero Apache Tribe, Jicarilla Apache Nation, Navajo Nation, and Eastern Band of Cherokee Indians.

"it would be contrary to the terms of [the ICWA] to conclude . . . that parental inaction could excuse the failure of the juvenile court to ensure that notice . . . was provided to the Indian tribe named in the proceeding." (See also *In re Alice M.*, *supra*, 161 Cal.App.4th at pp. 1195-1197 [forfeiture doctrine generally does not apply to bar consideration of appellate claims concerning ICWA notices not raised in dependency proceedings].) Moreover, the fact that Father did not claim Indian heritage does not preclude his appellate challenge to the sufficiency of the ICWA notice. "[A]ny parent whose parental rights were terminated may challenge the lack of ICWA compliance. 25 U.S.C. § 1914; [Cal. Rules of Court,] rule 5.486(a).)" (*In re A.B.* (2008) 164 Cal.App.4th 832, 839, fn. 4; see also *In re B.R.* (2009) 176 Cal.App.4th 773, 779.)

We conclude that Appellants' failure to challenge the sufficiency of the ICWA notice below does not bar their assertion of that claim here.[5]

2.     *The Claim Has No Merit*

As discussed above, notice under the ICWA must be given "where the court knows or has reason to know that an Indian child is involved" in the dependency proceeding. (25 U.S.C. § 1912 (a); see also [Welf. & Inst. Code,] § 224.2, subd. (a).) This means that an ICWA notice must be given where the court knows or has reason to believe that the child "is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4).) As defined by law, an "Indian tribe" is "any Indian tribe, band, nation, or other organized group or community of Indians recognized as eligible for the services provided to Indians by the Secretary [of the Interior] because of their status as

---

[5] In addition, this case must be distinguished from one in which a forfeiture is found because the parents, in *successive* appellate proceedings, raised ICWA issues but did not raise them at any time at the trial level. (See *In re X.V.* (2005) 132 Cal.App.4th 794, 804-805.)

11

Indians. . . ." (25 U.S.C. § 1903(8); see § 224.1, subd. (a); Cal. Rules of Court, rule 5.664(a)(6).) As noted by one court: "The Department of the Interior publishes a list of 'Indian Entities Recognized and Eligible to Receive Services from the United States Bureau of Indian Affairs' in the Federal Register, and the California Department of Social Services, Children and Family Services Division, publishes a list of tribes entitled to ICWA notice on its Web site." (*In re J.T.* (2007) 154 Cal.App.4th 986, 992.)

Mother contends that the ICWA notices provided were legally inadequate because "the Department failed to provide any notice to the Fort McDowell Yavapai Nation, formerly known as the Fort McDowell Mohave-Apache Community." She asserts that this is a federally recognized Indian tribe and it contains a combination "of three different original tribes, the Apache, the Mohave and the Yavapai." Therefore, she urges, the Department was required to give notice to the Fort McDowell Yavapai Nation because of Mother's claimed Apache heritage. She contends that, because of this defect, the court abused its discretion in finding that the notice requirements under the ICWA had been fulfilled, and that this error was prejudicial. In his brief, Father adopts and incorporates by reference Mother's arguments that the Department failed to give proper notice under the ICWA.

We agree that the Fort McDowell Yavapai Nation is a federally recognized Indian tribe. It is identified as such in both the Federal Register and on the list of tribes entitled to ICWA notice published by the California Department of Social Services (DSS), Children and Family Services Division. (See 78 Fed.Reg. 26,384-02 (May 6, 2013); http://www.childsworld.ca.gov/res/pdf/CDSSTribes.pdf .)[6] But neither the federal nor

---

[6] On our own motion, we take judicial notice of the relevant pages of the Federal Register and the DSS directory of federally recognized Indian tribes, pursuant to Evidence Code sections 452, subdivision (c), and 459, subdivision (a). (*In re N.M.* (2008) 161 Cal.App.4th 253, 268, fn. 9; see also *In re J.T.*, *supra*, 154 Cal.App.4th at pp. 992, 994, fn. 5.)

the state directory identifies the Fort McDowell Yavapai Nation as being connected with the Apache tribe. In fact, the DSS directory lists the Fort McDowell Yavapai Nation under the tribal affiliation, "Yavapai." (http://www.childsworld.ca.gov/res/pdf/CDSSTribes.pdf, p. 53.) And, as noted (see fn. 2, *ante*), the Department did, in fact, give notice to each of the eight federally recognized tribes identified in the DSS directory as having Apache affiliation. (*Id.* at pp. 1-2.) Therefore, the ICWA notice was not defective.

In support of her claim that the Fort McDowell Yavapai Nation is comprised, in part, of the Apache tribe, Mother cites to documents posted on at least four different Internet Web sites. Her reliance on, and citation to, this factual material that was not presented below is improper. (See *People v. St. Martin* (1970) 1 Cal.3d 524, 537-538 ["ordinarily matters not presented to the trial court and hence not a proper part of the record on appeal will not be considered on appeal"]; Cal. Rules of Court, rule 8.204(a)(2)(C) [appellant's opening brief shall include "a summary of the significant facts *limited to matters in the record*"], italics added; cf. *In re Zeth S.* (2003) 31 Cal.4th 396, 399-400. [appellate court generally may not consider postjudgment evidence outside the record on appeal to reverse dependency court's order terminating parental rights].) To the extent that Mother is, by her citation to these Internet materials, implicitly asking this court to take judicial notice of them, we deny that implicit request. (See *In re K.P.* (2009) 175 Cal.App.4th 1, 5 [disregarding Internet information outside the appellate record purporting to indicate that parent's reported tribe might be affiliated with federally recognized Indian tribe; judicial notice not requested by appellants and judicial notice of material not before juvenile court would not be proper].)[7]

---

[7] A number of appellate courts have declined litigants' requests for judicial notice of various articles and other materials found on the Internet that, generally, were not presented to the trial court. (See, e.g., *Hartwell Corp. v. Superior Court* (2002) 27

*(continued)*

There was substantial evidence supporting the trial court's orders of June 5, 2012, and October 11, 2012, concluding that proper notice under the ICWA had been given by the Department and that the ICWA did not apply.  Accordingly, Appellants' challenges to the order fail and their requests that the permanency order be conditionally reversed because the ICWA notice was defective are denied.

Cal.4th 256, 279, fn. 12 [Internet articles on state agency Web site]; *Sargon Enterprises, Inc. v. University of Southern California* (2013) 215 Cal.App.4th 1495, 1502, fn. 4 [Internet "articles from law firm Web sites and blogs hailing [*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747] as a change in the evidentiary standard."]; *County of Kern v. Workers' Comp. Appeals Bd.* (2011) 200 Cal.App.4th 509, 519, fn. 6 [Internet sites purporting to show "that other cities and counties have adopted formal agreements officially acknowledging volunteer fire departments for purposes of workers' compensation"]; *World Financial Group, Inc. v. HBW Ins. & Financial* Services, Inc. (2009) 172 Cal.App.4th 1561, 1569, fn. 7 [Internet articles, blogs, and Web sites "purporting to demonstrate that the content of the communications at issue here involve a matter of public interest"]; *Zumbrun Law Firm v. California Legislature* (2008) 165 Cal.App.4th 1603, 1623, fn. 12 [Legislature's Internet site showing laws currently in effect]; *Conlan v. Shewry* (2005) 131 Cal.App.4th 1354, 1364, fn. 5 [state auditor's report on Medi-Cal fraud posted on Internet].)

## DISPOSITION

The order filed May 13, 2013, pursuant to section 366.26, approving adoption as the permanent plan for the minor, S.F., and terminating the parental rights of Mother, D.S., and Father, R.F., is affirmed.

_____
Márquez, J.

WE CONCUR:

_____
Rushing, P. J.

_____
Premo, J.

15